REDACTED VERSION
SUBJECT TO MOTION TO SEAL

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BNY AIS NOMINEES LIMITED, GOTTEX ABL (CAYMAN) LIMITED GOTTEX MATRIX ASSET FOCUSED MASTER FUND LIMITED, GOTTEX/NOMURA MARKET NEUTRAL FUND (USD) LIMITED, GOTTEX ABI MASTER FUND LIMITED, and HUDSON ABL FUND LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> MARLON QUAN, and STEWARDSHIP INVESTMENT ADVISORS, LLC, <br><br> Defendants. | C.A. No. 3:08-cv-00796-AWT |

## DECLARATION OF GABRIEL BOUSBIB IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR EXPEDITED DISCOVERY AND A TEMPORARY PRELIMINARY INJUNCTION

GABRIEL BOUSBIB, makes the following declaration, pursuant to 28 U.S.C. § 1746:

1.    I make this declaration in support of Plaintiffs BNY AIS Nominees Limited ("BNY") and Gottex ABL (Cayman) Ltd., Gottex Matrix Asset Focused Master Fund Ltd., Gottex/Nomura Market Neutral Fund (USD) Ltd., Gottex ABI Master Fund Ltd., and Hudson ABL Fund Ltd.'s (the "Gottex Funds"), (collectively with BNY, "Plaintiffs") Emergency Motion for Expedited Discovery and a Temporary Preliminary Injunction.

2.    I am a Senior Managing Director for the investment manager to the Gottex Funds, Gottex Fund Management Sarl ("Gottex"). I have worked for Gottex for three years. Prior to my employment with Gottex, from September 2001 to December 2004, I was employed by the Chief Executive Officer for the PlusFunds Group, a then $3 billion fund of hedge funds. I started my career in capital markets as a derivatives trader and risk manager for Merrill Lynch Capital Markets.

REDACTED VERSION
SUBJECT TO MOTION TO SEAL

3.      In my capacity as Senior Managing Director for Gottex, I am a member of the Gottex Research Committee and Gottex Asset Allocation Committee which have overall responsibility for the approval of hedge fund investments by any one of the fund of funds programs managed by Gottex.  I am therefore familiar with the details of the Gottex Funds' investments, including their investments in the Stewardship Credit Arbitrage Fund, Ltd. (the "Hedge Fund"), which is managed by Defendants Marlon Quan ("Quan") and Stewardship Investment Advisors, LLC ("Stewardship") (collectively, "Defendants").  Based on my activities in connection with the Gottex Funds, and my review of pertinent business records and other documents listed below, I have personal knowledge of the following facts.

**Defendants Failed to Properly Satisfy The Gottex Funds' Redemption Requests**

4.      Between 2005 and 2007, the Gottex Funds invested approximately $100 million in the Hedge Fund.  Although I was involved in some of the activities and communications with Stewardship and Quan throughout this time period, including visiting the fund manager in June of 2005, my colleague J.P. Bailey was the primary contact with Stewardship until I took increased responsibility in the beginning of April 2008.

5.      I took increased responsibility for the Gottex Funds' investments in the Hedge Fund after Quan informed us on April 1, 2008 that he intended to cause the Hedge Fund to satisfy our requests to redeem our full investment in the Hedge Fund with an in-kind distribution.

6.      Because it is highly uncommon in the hedge fund industry to satisfy redemption requests in kind rather than with cash, we were concerned by this unexpected revelation and immediately sought additional information from Quan and Stewardship about the nature of the proposed in-kind distribution.

7.      In the first three weeks of April 2008, we contacted Quan by telephone and e-mail on a number of occasions to try to find out more information about the nature of the proposed in-kind distribution.  Quan told us information would be forthcoming but ultimately did not provide this information to us in response to our phone calls and e-mails.  We next sent a letter to Quan

REDACTED VERSION
SUBJECT TO MOTION TO SEAL

on April 24, 2008, requesting detailed information regarding the assets that Stewardship contemplated distributing "including, without limitation, a list of such assets, the most recent valuation of such assets, and the valuation method of such assets." A true and accurate copy of this letter is attached hereto as Exhibit 1.

8.      In the April 24th letter, we reminded Quan that we had specifically requested this information on previous occasions and been told by Stewardship that the information would be forthcoming, but had received nothing from Stewardship despite these representations.

9.      The next day we received a letter, not from Quan, but from counsel for the Hedge Fund, attaching a draft "Participation Note" that it said the Hedge Fund planned to offer in satisfaction of our redemption requests. The draft "Participation Note" did not include any schedule of assets purportedly conveyed by the Hedge Fund and did not respond to our request for detailed information concerning the assets that the Hedge Fund purported to pay to satisfy its obligation to the Gottex Funds or their valuation. A true and accurate copy of this letter is attached as Exhibit 2.

10.     The Gottex Funds, through our in-house counsel, responded on April 29, 2008 with a detailed e-mail to the Hedge Fund's counsel, on which I was copied, providing a number of detailed comments on and questions about the draft "Participation Note," and pointing out that the draft "Participation Note" was defective in numerous respects. In that transmission, our counsel further offered to provide a marked-up copy of the draft "Participation Note" reflecting their comments and questions, and offered to set up a telephone call with outside counsel for the Gottex Funds to discuss the comments and questions. A true and accurate copy of this e-mail is attached as Exhibit 3.

11.     Rather than respond to the issues we raised about the defects in the draft "Participation Note," no one at Stewardship addressed the issues and instead said they would proceed with a redemption in kind based on "Participation Notes" that were unchanged from the draft.

REDACTED VERSION
SUBJECT TO MOTION TO SEAL

12.     Our in-house counsel sent another letter to counsel for the Hedge Fund on May 6, 2008, on which I was copied, pointing out again that the Gottex Funds had received no information about the assets purportedly being transferred from the Hedge Fund through the Participation Notes.  A true and accurate copy of this letter is attached as Exhibit 4.  In the letter, we again requested information and documentation concerning the payment of our Redemption Price.

13.     While these communications were being transmitted through our counsel, I also requested information directly from Stewardship and Quan about the nature of the assets underlying the purported "Participation Notes," in part to attempt to perform an independent assessment and valuation.  I also attempted to formulate an alternative proposal for a redemption in-kind that would avoid some of the clear defects of the draft "Participation Note."  I had several conversations with Quan as part of this process as well as a meeting with Quan on May 8, 2008.

14.     Despite these efforts, however, Quan and Stewardship failed to respond to our repeated requests for information concerning the underlying assets and proceeded with a purported redemption in kind based on purported "Participation Notes."

15.     On May 12, 2008, Defendants caused the Hedge Fund to deliver five documents described on their face as "Participation Notes" to the Gottex Funds that Defendants claimed were being provided in satisfaction of our March 31, 2008 redemptions (in addition to a wire transfer of nominal amounts totalling $64,547.61 reflecting only a very small fraction of the money owed).  Each so-called Participation Note is a certificate signed by Quan.  The Participation Notes state that they are certificates providing the holder a "participation" in a schedule of underlying loans of the Hedge Fund.  The Participation Notes did not cure any of the defects that we had communicated previously to Stewardship.  True and accurate copies of the Participation Notes are attached hereto as Exhibits 5 - 9.

16.     The available information concerning the Participation Notes makes clear that they are defective and of a value much lower than the value of the Gottex Funds' Redemption

4

REDACTED VERSION
SUBJECT TO MOTION TO SEAL

Price. First, the Participation Notes, do not have a value "equal to the relevant Redemption Price" as required by the Hedge Fund's Bye-Laws. The recourse under the loan participations is to the seller of the participations first, the Hedge Fund. Thus, any valuation of the participations must take into account the credit risk of the Hedge Fund, including being subject to liens by lenders such as the Hedge Fund's senior lender, in addition to the credit risks attendant to the underlying loans. These credit risks serve to lower the value of the participations. Moreover, even if the underlying loans had a value equal to the Redemption Price – and they do not – the value of the "participation" in those loans depends on a number of factors that each result in a lower value than the value of the underlying loans, including (i) the nature, adequacy and value of the underlying loans, including the Holder's rights, remedies and interests with respect to the loans; (ii) the creditworthiness of the underlying Borrowers, based on an evaluation of the financial condition, financial statements, and information about each Borrower's business, cash flows, capital structure, and future prospects; (iii) information relating to the market for the Participation Notes, trading in the participations, interests in similar participations and the market environment, and investor attitudes towards the participation and similar participations; (iv) the reputation and financial condition of any intermediate participant; and (v) general economic and market conditions affecting the fair value of the Participation Notes.

17.     To date, Defendants have refused to supply the Gottex Funds with information necessary to evaluate these factors and attempt any valuation. However, based on the information available in the Participation Notes themselves, the value of the Participation Notes is less than the face value of the underlying loans and, accordingly, less than the Redemption Price owed to the Gottex Funds because (a) the Hedge Fund is an intermediary; (b) recourse to the Hedge Fund is limited by Section 6 of the Participation Notes; (c) the Participation Notes by their terms (Section 9, and the introductory legends) cannot be transferred, resold, pledged, or otherwise disposed of without consent from the Hedge Fund and cannot be transferred to certain types of persons; and (d) there is no market for the Participation Notes. Moreover, the Participation Notes purport to transfer a mere "participation" which does not include any right to

5

REDACTED VERSION
SUBJECT TO MOTION TO SEAL

request or receive financial or other information about the Borrowers or other Obligors and specifically excludes (in Section 2.1 of the Participation Note) non-transferable rights of the Hedge Fund.  Given these restrictions, even if the Participation Notes were valid "assets of the [Hedge Fund]," which they are not, the Redemption Price was not "paid" to the Gottex Funds by "an in-kind distribution" of the Hedge Fund's assets, as an "asset" that we cannot transfer, sell, pledge or dispose of has not been "distributed" to us.

18.      Second, the Hedge Fund does not hold as assets the participations purportedly created by and offered in the Participation Notes and therefore the participations are not "assets of the [Hedge Fund]."  Instead, they are instruments that have been created by the Hedge Fund – the Participation Notes describe the Hedge Fund in Section 6(c) as "making and handling the Participation."  In fact, the underlying loans are not even assets of the Hedge Fund – the Participation Notes recite that the underlying loans were transferred to a "trust."  However, Quan has admitted that there is in fact no "trust," no trust indenture, and no formal, legal sequestration of the loans purportedly underlying the Participation Notes.

19.      In addition, based on the loan schedule attached to the Participation Notes, it is clear that the loans purportedly underlying the Participation Notes are not of a similar type and liquidity to the loans in which the Hedge Fund represented that it typically invests.  Instead, many of the loans underlying the Participation Notes have maturity dates of much longer duration than the 90-day notes in which the Hedge Fund represented that it typically invested.  When questioned about this disparity, Quan admitted to me that approximately half of the underlying loans had longer maturities, up to eighteen months maturity, than the majority of the Hedge Fund's assets, and commented only that due to the amortizing nature of these loans, the actual maturity may be lower.  However, Quan did not provide me with any supporting evidence or guarantee of this statement.

20.      Finally, according to the loan schedule attached to the Participation Notes, approximately 40% of the loans underlying the Participation Notes were originated after the Redemption Date of March 31, 2008 and in fact, loans were originated on the very date that

REDACTED VERSION
SUBJECT TO MOTION TO SEAL

payment was due to us, May 12, 2008.  These loans were made by the Hedge Fund to an entity

named PAC Funding, LLC ("PAC").  When questioned about this entity, Quan explained that

PAC had entered into loan transactions with Quan's other company, Acorn Capital Group, LLC

("Acorn").  In other words, the Hedge Fund loaned money to PAC, which in turn provided

financing to Acorn.  Effectively, the Hedge Fund acted as a financing source of Acorn for these

loans.  Although Defendants had disclosed to us that Acorn was the loan origination company for

the Hedge Fund, neither Stewardship, Quan, nor the Hedge Fund ever disclosed to Gottex that

the Hedge Fund was entering into such affiliated party transactions, particularly considering the

large percentage of the Hedge Fund these transactions represent.

     21.     Each Participation Note is defined to be a "Participation Note representing [a

specified number of] Units of loan participations in the aggregate amount of [a specified dollar

value] and the corresponding interest in the Trust."  When I asked Quan about the "Trust," he

told me that there is in fact no "trust," no trust indenture, and no formal, legal sequestration of

the loans purportedly underlying the Participation Notes.

     22.     On May 13, 2008, the Gottex Funds informed Quan that they refused to accept

any of the "Participation Notes" as valid tender of payment by the Hedge Fund of any or all of

the amount owed to any or all of the Gottex Funds.

     23.     Accordingly, the Gottex Funds have yet to receive the redemption proceeds owed

to them, which amount to more than $103 million plus accrued interest from May 13, 2008 to the

present.

# REDACTED

**Defendants Have Refused to Provide Information Concerning the Hedge Fund's Current
Financial Status as well as the Participation Notes**

     24.     On June 4, 2008, after the filing of this lawsuit, we sent another letter to Quan and

to the directors of the Hedge Fund requesting once again information concerning the payment of

REDACTED VERSION
SUBJECT TO MOTION TO SEAL

the Gottex Funds' redemptions, and noting that we had not yet received the information requested. A true and accurate copy of this letter is attached hereto as Exhibit 10.

25.     In this letter, we also expressed our concern that "any redemptions of other investors or distributions, reinvestments or encumbering of any cash or other assets available to the Fund, or any rolling over of the Fund's investments, will dissipate and/or put at risk money that should be used to pay the Redemption Price to the Gottex Funds."

26.     In light of that concern, we included a list of specific documents and information we need to make an independent evaluation of the financial status of the Hedge Fund and the risk to the redemption proceeds owed to the Gottex Funds.

27.     As the investment manager to the Hedge Fund making all of the decisions about the investments of the Hedge Fund, Stewardship necessarily maintains information and documentation about the assets of the Hedge Fund, including the information requested by the Gottex Funds. When we have obtained information about the assets of the Hedge Fund prior to our redemption, it was Stewardship that provided that information.

28.     On June 9, 2008, counsel for the Hedge Fund sent a letter to the Gottex Fund's Bermuda counsel stating that it refused to provide any of the documents or information requested. A true and accurate copy of this letter is attached as Exhibit 11. Specifically, the letter responded by stating that the Gottex Funds are "not entitled to the information requested" and that the "requests are denied" and further asserted that Hedge Fund would only provide the information sought in the June 4 Letter by way of discovery or court order.

29.     To this date, the Gottex Funds have received no material information from Stewardship or Quan concerning the current financial status of the Hedge Fund or the value of the interests that have been purportedly conveyed through the Participation Notes.

30.     I have concerns about the current financial status of the Hedge Fund, in part, based on the decision by Defendants to cause the Hedge Fund to pay our Redemption Price with "Participation Notes" that are seemingly worthless or, at a minimum, worth substantially less than the amount owed to the Gottex Funds.

8

REDACTED VERSION
SUBJECT TO MOTION TO SEAL

31.     Defendants' decision to cause the Hedge Fund to pay the Gottex Funds' Redemption Price in a form other than the intended "cash" payment causes us concern that the Defendants are unwilling or unable to cause the Hedge Fund to make this payment in cash or valid securities in kind.

32.     I am also concerned about the ability of the Gottex Funds to receive the payment owed to them in light of the ease with which the purported assets of the Hedge Fund can be dissipated on short notice.  The short-term, highly-liquid notes in which Defendants invested on behalf of the Hedge Fund can be easily and quickly converted into other investments.  Indeed, Defendants disclosed in the Participation Notes that even after the Redemption Date and up to and including the date the payment was due to the Gottex Funds, Defendants re-invested cash received from its existing notes into riskier and longer-term investments as opposed to setting the cash aside for payment to the Gottex Funds.

**The Assets of the Hedge Fund Are and Will be Diminishing**

33.     The last financial statement we received from the Hedge Fund was the Hedge Fund's audited consolidated financial statement for the year ended December 31, 2007.  We received this statement on or around March 31, 2008.

34.

**REDACTED**

35.

**REDACTED**

36.     **REDACTED**

9

REDACTED VERSION
SUBJECT TO MOTION TO SEAL

37.

# REDACTED

38.

# REDACTED

39.          # REDACTED

                                                                    Instead,
the Hedge Fund would benefit from such yield, effectively using the Gottex Funds redemption
amount – money that belongs to the Gottex Funds – as free capital.

40.     In a subsequent email, when I questioned Quan about the PAC transactions,
including in particular their abnormally long maturities, Quan stated that these transactions had
been restructured in "an attempt to further ensure the repayment of the loans outstanding by
securing additional collateral protection in the event that a default was to occur." This response
suggests that a large proportion of the loans included in the Participation Notes are in difficulty,
raising further concerns about the financial status and stability of the Hedge Fund.

**Other Investors in the Hedge Fund Have Submitted Redemption Requests**

41.     In the June 9, 2008 letter we received from the Hedge Fund's counsel, the Hedge
Fund stated that since the filing of a lawsuit by the Gottex Funds against the Hedge Fund in
Bermuda, "there has been a large number of redemption requests such that Stewardship has had
no choice but to suspend publication of NAVs [net asset value] with immediate effect."

42.     Stewardship and the Hedge Fund refused to provide information about the volume or value of the redemption requests.  They claim that they have suspended publication of the net asset value of the Hedge Fund because of the large number of redemption requests, but those redemption requests should have no effect on their ability to publish the net asset value of the Hedge Fund.  Prior to the submission of our redemption requests, we received regular reports of the net asset value of the Hedge Fund, which, according to Stewardship, held predominately short-term, highly-liquid assets that are generally simple to value.  A hedge fund normally suspends the publication of the net asset value due to an inability to price the hedge fund assets, not in connection with redemptions.  Accordingly, the decision by Stewardship to suspend the publication of the net asset value of the Hedge Fund gives me great concern as to the true value of assets held by the Hedge Fund.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 26, 2008.

Gabriel Bousbib

LIBA/1905607.1

11