UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BNY AIS NOMINEES LIMITED, GOTTEX ABL (CAYMAN) LIMITED, GOTTEX MATRIX ASSET FOCUSED MASTER FUND LIMITED, GOTTEX/NOMURA MARKET NEUTRAL FUND (USD) LIMITED, GOTTEX ABI MASTER FUND LIMITED, and HUDSON ABL FUND LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> MARLON QUAN and STEWARDSHIP INVESTMENT ADVISORS, LLC, <br><br> Defendants. | : Civil Action No. 3:08cv00796 (AWT) <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : July 11, 2008 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS THIS ACTION FOR IMPROPER VENUE
AND IN OPPOSITION TO LIFTING THE STATUTORY STAY OF DISCOVERY**

Defendants Marlon Quan and Stewardship Investment Advisors, LLC ("SIA") respectfully submit this memorandum of law in support of their motion to dismiss this action, pursuant to Fed.R.Civ.P. 12(b)(3), for improper venue. In addition, this memorandum addresses the effect of the automatic stay of discovery, imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), on plaintiffs' request for expedited discovery. Also submitted in support of the motion to dismiss is Mr. Quan's accompanying Declaration, dated July 8, 2008, and the exhibits thereto ("Quan Decl.").

As we advised the Court in correspondence dated July 1, 2008 and at the status conference on July 2, if this action were not dismissed for improper venue, SIA and Mr. Quan intend to move to dismiss various of plaintiffs' claims, including the claim under Section 10(b)

of the Securities Exchange Act of 1934, pursuant to Fed.R.Civ.P. 12(b)(6) and 12(f). However, as directed by the Court at the July 2 conference, this memorandum is limited to addressing the venue issue and the PSLRA discovery stay, without prejudice to defendants' right to make such further Rule 12 motion if necessary.

## FACTUAL BACKGROUND

Each of the plaintiffs, other than BNY AIS Nominees Limited ("BNY"), is a former shareholder of a hedge fund called the Stewardship Credit Arbitrage Fund, Ltd. (the "Fund"). The Complaint refers to these five former shareholder plaintiffs as the "Gottex Funds," a shorthand we adopt in this brief. BNY is alleged to have served as the "nominee" for the Gottex Funds, "holding their investments and assets, including the Gottex Funds' Class A shares in the Hedge Fund, and redemption proceeds thereof." Complaint ¶9.

The Gottex Funds first invested in the Fund in 2005. Complaint ¶2. They allegedly did so in reliance on the Fund's July 1, 2005 Private Placement Memorandum ("PPM"). *E.g.*, Complaint ¶¶20-23. The PPM is before the Court as Exhibit 2 to the Declaration of J.P. Bailey, dated June 26, 2008, which plaintiffs submitted in support of their "emergency motion" for expedited discovery and other extraordinary relief.

As the PPM states, the Fund is a mutual fund company incorporated under the laws of Bermuda, with its offices in Hamilton, Bermuda. PPM at 1. Mr. Quan is one of the Fund's four directors. PPM at 3; Quan Decl. ¶2. SIA is a Delaware limited liability company, with its offices in Connecticut, that serves as Investment Manager of the Fund. PPM at 3. Mr. Quan is SIA's managing member. Quan Decl. ¶1; *see also* Complaint ¶11.

2

All of the claims in the Complaint relate to or arise out of the Gottex Funds' investment in the Fund. Although dressed up in a variety of legal theories, these claims fall into two basic categories.

One set of claims relates to the amount of management fees that SIA charged as Investment Manager of the Fund. The Complaint alleges that Mr. Quan breached a promise to reduce certain of those fees if necessary to boost the Gottex Funds' return on their investment in the Funds. Complaint ¶¶35-46. This agreement allegedly was made in June 2006 but never was memorialized in writing. Yet, the Gottex Funds allege that on five separate occasions, spanning July 2006 to March 2007, they invested an additional $56,000,000 in the Fund in reliance on the unwritten agreement. Complaint ¶¶35-41, 43. The Gottex Funds also allege that in reliance on the same unwritten agreement they maintained their original investment in the Fund. Complaint ¶36.

The second category of claims relates to the Gottex Funds' request that the Fund redeem their shares. The Complaint alleges that Mr. Quan induced the Gottex Funds to postpone redemption of their shares, thus maintaining their investment in the Fund, by stating that the Fund needed time to attract new investors so that it would be able to redeem the shares with cash. Complaint ¶¶55-57. The Complaint alleges that the Fund wrongfully redeemed the Gottex Funds' shares not in cash but with certain Participation Notes, which are claimed to violate the terms of the PPM and the Fund's by-laws. Complaint ¶¶74-80.

The Gottex Funds acknowledge that on their behalf, their nominee BNY executed Share Applications to invest in the Fund. Complaint ¶22. Copies of the Share Applications are before the Court as Exhibit A to Mr. Quan's accompanying Declaration.[1] In identical language

---

[1]   One of these Share Applications was by BNY as nominee for GVA ABL Portfolio Limited ("GVA"), which is not a party to this case. However, the Complaint acknowledges that the shares

3

beginning at page A-3, the Share Applications set forth "understandings, covenants, representations and warranties" by the Gottex Funds in favor of *both* the Fund *and* "the Investment Manager." As the Complaint acknowledges, the Share Applications were executed "pursuant to the terms of the Private Placement Memorandum." Complaint ¶22. The PPM explicitly defines the "The Investment Manager" as SIA, acting "under the direction of Mr. Marlon Quan". PPM at 3. In paragraph 3 at page A-2 of the Share Applications, the Gottex Funds agreed that "[t]erms used in this Share Application but not defined herein shall have the meanings assigned to them in the [Private Placement] Memorandum."

Among the "understandings, covenants, representations and warranties" made by the Gottex Funds in favor of the Fund and SIA is an agreement, contained in paragraph 15(e) at page A-8 of the Share Applications, designating the courts of Bermuda as the exclusive venue for any action related to or arising out of, directly or indirectly, the Gottex Funds' investment in the Fund. Thus, in broad language, the Gottex Funds agreed as follows in the Share Applications:

> UNDERSTANDINGS, CONVENANTS, REPRESENTATIONS AND WARRANTIES. Recognizing that the Fund *and the Investment Manager* rely on the information and on the representations set forth herein, Subscriber hereby covenants, represents and warrants to the Fund *and the Investment Manager* as follows:
>
> * * *
>
> 15.   Miscellaneous.
>
> * * *
>
> (e)   The parties agree that any action or proceeding arising, directly, indirectly or otherwise, in connection with, out of, related to, or from, this Share Application, any breach hereof, or any transaction covered hereby, shall be resolved, whether by arbitration or otherwise, exclusively within Bermuda. Accordingly, the parties consent and submit to the exclusive jurisdiction of the courts located within Bermuda. The parties further agree that any such action or proceeding brought by

---

purchased by GVA were subsequently transferred to BNY for and on behalf of plaintiffs Hudson ABL Fund Ltd. and Gottex ABI Master Fund Ltd. Complaint ¶21.

>either such party to enforce any right, assert any claim, or obtain any relief whatsoever in connection with this Share Application shall be commenced by such party exclusively in Bermuda.

Share Applications at pp. A-3, 8 (emphasis added), Quan Decl. Ex. A.

When the Gottex Funds subscribed to additional shares in the Fund, they executed a form Additional Subscription Request. In it, they "restat[ed] all of the declarations, acknowledgements, representations, warranties, agreements, and understandings made in the undersigned's original Share Application as if they were made on the date hereof". Quan Decl. ¶4, Ex. B.

The forum-selection clause in paragraph 15(e) is not the only portion of the Share Applications that refers to SIA. In paragraph 12 at page A-4 of the Share Applications, each of the Gottex Funds, as a Subscriber to Class A shares of the Fund, agreed to "indemnify and hold harmless the Fund *and the Investment Manager and each of their affiliates and their officers, directors and employees*" for losses caused by any misrepresentation by the Subscriber "or the failure by Subscriber to fulfill any covenants or agreements under this Share Application." Share Applications at p. A-4, Quan Decl. Ex. A (emphasis added).

Recognizing the binding force of the forum-selection clause, the Gottex Funds have commenced an action against the Fund in the Supreme Court of Bermuda. In the Bermuda action, as in this case, the Gottex Funds seek money damages or declaratory relief based on their contention that the Fund's redemption of their shares through the Participation Notes, rather than cash, was unlawful. A copy of the writ of summons and Statement of Claim in the Bermuda action is contained at Exhibit C to Mr. Quan's accompanying Declaration. A copy of the Bermuda court's injunctive order, freezing assets of the Fund and directing the Fund to provide extensive information to the Gottex Funds, previously was submitted to this Court.

## ARGUMENT

### I.

### THIS ACTION MUST BE DISMISSED FOR IMPROPER VENUE AS A RESULT OF THE BERMUDA FORUM-SELECTION AGREEMENT

The enforceability of the forum-selection clause in this case is a matter of federal law. *Caribbean Wholesales and Service Corp. v. U.S. JVC Corp.*, 24 Fed.Appx. 16, 18 (2d Cir. 2001); *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990); *United Rentals (North America), Inc. v. Myers*, 2003 WL 23498385 at *2 (D. Conn. 2003) (Exhibit A). The Supreme Court has long held that forum-selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). This exception to enforcement must be construed "narrowly," *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993), as a "strong showing" must be made to overcome the parties' agreed upon choice of forum. *M/S Bremen*, 407 U.S. at 15. A party seeking to avoid a forum-selection clause bears the burden of establishing "that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Id.* at 18.

There is no reason to find the forum-selection clause in this case unreasonable. The parties are obviously sophisticated. The Gottex Funds, each of which is an off-shore mutual fund, managed by a Swiss parent, are powerful financial players that invested more than $100-million in the Fund. *See* Complaint ¶10. The Gottex Funds cannot complain that litigating over that investment in the agreed upon forum would be unreasonable or unduly difficult, especially when they are already prosecuting a substantially similar action against the Fund in Bermuda. In any event, as this Court has held, relative inconvenience is not a basis to refuse enforcement of a

forum-selection clause. *Juliano v. Cecil Saydah Co.*, 2005 WL 475436 at *2 (D. Conn. 2005) ("Although the court acknowledges that Connecticut is a more convenient forum for him, plaintiff does not explain how he is unable to pursue his claims in California.") (Exhibit B).

Though the forum-selection clause in paragraph 15(e) of the Share Applications is only three sentences in length, it employs the words "exclusive" or "exclusively" no fewer than three times. This language leaves no doubt that the clause is mandatory rather than permissive, reflecting "the parties intent to make jurisdiction exclusive.'" *John Boutarie & Son, Wine and Spirits, S.A. v. Attiki Importers and Distributors, Inc.*, 22 F.3d 51, 52-53 (2d Cir. 1994), *quoting Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989) (internal quotation marks omitted).

Nor can it seriously be argued that this action is not one, in the words of the forum-selection clause, "arising, directly, indirectly or otherwise, in connection with, out of, related to, or from . . . any transaction covered" by the Share Applications. Every purported claim in the Complaint arises out of or relates to the Gottex Funds' investment in Class A shares of the Fund. The claims about the Participation Notes relate to that investment. The claims about the alleged agreement to reduce SIA's management fees relate to that investment – specifically to the Gottex Funds' level of return on their investment in the Fund and to their alleged decision to maintain and increase their investment in the Fund in reliance on the unwritten fee agreement.

Although SIA and Mr. Quan are not signatories to the Share Applications, that is no bar to their enforcement of the forum-selection clause. "It is well established that 'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.'" *International Private Satellite Partners, L.P. v. Lucky Cat Ltd.*, 975 F.Supp.

483, 485-86 (S.D.N.Y. 1997), *quoting Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F.Supp. 1427, 1434 (N.D. Cal. 1997).

Thus, "a non-party may nonetheless invoke such a clause if the non-party is 'closely related' to one of the signatories." *Direct Mail Production Services Ltd. v. MBNA Corp.*, 2000 WL 1277597 at *3 (S.D.N.Y. 2000) (dismissing action based on forum-selection clause even though none of the defendants signed it) (Exhibit C). A party is "closely related" if "it becomes 'foreseeable' that it will be bound" by the clause. *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993), *quoting Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988). *See also Weingrad v. Telepathy, Inc.*, 2005 WL 2990645 at *5-*6 (S.D.N.Y. 2005) (forum-selection clause applied to claims against non-signatory defendants whom plaintiff alleged had acted in concert with signatory defendant) (Exhibit D); *Nanopierce Technologies, Inc. v. Southridge Capital Management LLC*, 2003 WL 22882137 at *5 (S.D.N.Y. 2003) (non-signatory chief financial officer bound by forum-selection clause in corporate purchase agreement) (Exhibit E). Accordingly, a plaintiff cannot "evade the effect of the forum-selection clause merely by joining . . . a non-signatory to the [agreement]". *Novak v. Tucows, Inc.*, 2007 WL 922306 at *13 (E.D.N.Y. 2007) (Exhibit F).

A third-party beneficiary to a contract containing a forum-selection clause would "by definition" satisfy this "closely related" test, though third-party beneficiary status is not required. *Hugel v. Corporation of Lloyd's*, 999 F.2d at 209-10 n.7 (7th Cir. 1993); *accord Novak v. Tucows, Inc.*, 2007 WL 922306 at *13 n.11. In *Roby v. Corporation of Lloyd's*, the Second Circuit specifically relied on third-party beneficiary analysis in dismissing investors' claims against defendants who had not signed a contractual clause designating the courts of England as the exclusive forum and English law as governing the dispute. *Roby*, 996 F.2d at 1359. These

8

non-signatory defendants in *Roby* were afforded the benefit of the forum-selection clause even though they were not even referred to in the clause. *Id.*

Here, by contrast, the "Investment Manager" – SIA – is specifically referred to, along with the Fund, as a beneficiary of the "understandings, covenants, representations and warranties" which begin at page A-3 of the Share Applications and include the forum selection clause in paragraph 15(e). SIA's third-party beneficiary status – as well as that of Mr. Quan, its managing member – is further confirmed by paragraph 12 at page A-4 of the Share Applications, where the Gottex Funds agree to indemnify "the Fund ***and the Investment Manager and each of their affiliates and their officers, directors and employees***" for any losses caused by a breach of any of those same covenants and agreements (emphasis added). This, then, is an even stronger case than *Roby* for concluding that SIA and Mr. Quan are third-party beneficiaries of the Share Applications, entitled to invoke the forum-selection clause. Otherwise it would make no sense for the contractual language to include "the Investment Manager" and its personnel.

Quite apart from third-party beneficiary analysis, it is obvious that SIA and Mr. Quan are "closely related" both to the Fund and to the Gottex Funds' claims arising out of their investment in the Fund. The Complaint alleges that SIA "makes all investment decisions on behalf of the Hedge Fund under the direction and control of Quan." Complaint ¶11. It is Mr. Quan who allegedly agreed to reduce the management fees if necessary to improve the Gottex Funds' returns on its investment in the Fund. According to the Complaint, both SIA and Mr. Quan "caused" the Fund not to redeem the Gottex Funds' shares in cash. Complaint ¶85. *See Weingrad*, 2005 WL 2990645 at *5-*6 (non-signatories allegedly acted in concert with signatory). If all this were not enough to render SIA and Mr. Quan "closely related" to the Fund

9

for purposes of enforcement of the forum-selection clause, Mr. Quan is also one of the four directors of the Fund. Complaint ¶17; PPM at 3.

Finally, any argument that particular legal theories of recovery asserted in this action may be unavailable in a Bermuda forum cannot defeat the forum-selection clause. Former Chief Judge Meskill made that clear in *Roby*, which rejected arguments that the clause should not be enforced because plaintiffs' claims under the U.S. securities laws and for treble damages under RICO could not be asserted in the English forum specified in the contract. 996 F.3d at 1361-1366.

Because the Gottex Funds cannot overcome the strong presumption in favor of enforcing the forum-selection clause designating Bermuda as the exclusive venue, this action must be dismissed.

## II.

### PLAINTIFFS HAVE NOT ESTABLISHED A BASIS FOR LIFTING THE AUTOMATIC STAY OF DISCOVERY IMPOSED BY THE PSLRA

The PSLRA directs that "[i]n any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss". 15 U.S.C. § 78u-4(b)(3)(B). The automatic stay "is triggered by the mere indication by the defense of its intention to file a motion to dismiss." *Kelleher v. ADVO, Inc.*, 2007 WL 1232177 at * 3 (D. Conn. 2007) (citation and internal quotation omitted) (Exhibit G); *see also Sedona Corp. v. Ladenburg Thalmann*, 2005 WL 2647945 at * 2 n.1( S.D.N.Y. 2005) ("There is no dispute that the PSLRA stay of discovery applies when an initial motion to dismiss is contemplated, but has not yet been filed.") (Exhibit H); *In re Crompton Corp.*, 2005 WL 3797695 at *1 n.2 (D. Conn. 2005) (stay applies even where motion to dismiss has not yet been filed but is anticipated)

(Exhibit I). The automatic stay applies to "all discovery" in any action where the complaint includes a claim under the federal securities laws, including discovery directed at state law claims alleged in the same complaint. *In re Smith Barney Transfer Agent Litigation*, 2006 WL 1738078 at *3 (S.D.N.Y. 2006) ("Nor will the stay be lifted on a line-item basis for non-securities claims that are alleged in a securities complaint.") (Exhibit J).

By letter dated July 1, 2008, counsel for SIA and Mr. Quan advised the Court of their intention to move for dismissal of the Gottex Funds' claim under Section 10(b) of the Securities Exchange Act of 1934, which is asserted in Count XI of the Complaint. Counsel reiterated this intention at the July 2 status conference. So, the automatic stay is in effect.[2]

Relegating discussion of the PSLRA stay to page 26 of their brief in support of their "emergency motion," the Gottex Funds simply assert that "nothing in the PSLRA bars expedited discovery." That begs the question of what showing is required to justify lifting the stay prior to a ruling on a motion to dismiss. The statute itself, as well as decisions of this Court which plaintiffs' brief ignores, answer that question clearly.

The statutory stay may be avoided only upon a showing that "particularized discovery" is "necessary" to "preserve evidence or to prevent undue prejudice." 15 U.S.C. § 78u-4(b)(3)(B). As this Court has held, Congress intended that "exceptional circumstances" be present before the stay could be lifted. *Kelleher,* 2007 WL 1232177 at *3; *Malin v. XL Capital Ltd.*, 2007 WL 433329 at *3 (D. Conn 2007) (same) (Exhibit K). "A party alleging that discovery is necessary to preserve evidence must present more than mere generalizations of fading memories and allegations of possible loss or destruction." *Kelleher*, 2007 WL 1232177 at *3 (citation and

---

[2] Even if the PSLRA's automatic stay did not exist, the Gottex Funds have not come remotely close to showing extraordinary circumstances sufficient to warrant the unilateral, expedited discovery requested in their "emergency motion." Pursuant to the Court's directive at the July 2 hearing, however, we limit this brief to addressing the standards for lifting the PSLRA's automatic stay, without prejudice to defendants' right to submit additional arguments against the request for extraordinary relief, if necessary.

11

internal quotation omitted). "The movant is required to make a specific showing that the loss of evidence is imminent as opposed to merely speculative." *Id*; *In re Vivendi Universal, S.A. Securities Litigation,* 381 F. Supp.2d 129, 130 (S.D.N.Y. 2003) (same). Even one of the cases cited by the Gottex Funds reflected these stringent standards in the course of denying a motion to lift the PSLRA stay to permit expedited discovery. *See Riggs v. Termeer*, 2003 WL 21345183 (S.D.N.Y. 2003), *cited* at p. 27 of, and copy annexed to, the Gottex Funds' brief on their "emergency motion"

The papers submitted in support of the "emergency motion" present absolutely nothing – not even speculation, much less specific facts – indicating any risk, much less an imminent risk, that evidence will be lost or destroyed. Unlike in any of the cases cited in the plaintiffs' brief, here the Bermuda court already has issued an injunction freezing the assets of the Fund and requiring the Fund to make expedited disclosure of all the same information sought by the Gottex Funds' "emergency motion" in this Court.[3] Counsel for SIA and Mr. Quan confirmed to the Court at the July 2 conference that the defendants intend to comply with the Bermuda court's order.

Plaintiffs likewise fail to show that they would suffer "undue prejudice" if the stay were enforced. While the Second Circuit has not defined what constitutes "undue prejudice" in the context of a PSLRA discovery stay, this Court has held that mere delay does not satisfy the statutory standard because "delay is an inherent part of every stay of discovery required by the PSLRA." *Kelleher*, 2007 WL 1232177 at *4 (citation and internal quotation omitted). Nor is a plaintiff's inability to gather evidence for settlement negotiations or to plan litigation strategy sufficient ground for lifting the stay. *In Re Refco, Inc.*, 2006 WL 2337212 at * 2 (S.D.N.Y.

---

[3] At the July 2 conference, counsel for the Gottex Funds conceded that "our request to the court in Bermuda I believe was identical to the request here for all intents and purposes." 7/2/08 Tr. 11-12.

2006) (Exhibit L); *In Re Smith Barney Transfer Agent Litigation*, 2006 WL 1738078 at \*2.  So the Gottex Funds' asserted inability to "use" documents obtained in the Bermuda proceeding in this action cannot satisfy their burden on an application to lift the stay.

The existence of other proceedings in which discovery is not stayed does not constitute undue prejudice for purposes of the PSLRA discovery stay.  "The discrepancy between PSLRA actions and other actions is not evidence of undue prejudice, but rather is evidence of Congress's judgment that PSLRA actions should be treated differently than other actions." *In Re Refco*, 2006 WL 2337212 at \*2.  Nor can allegations about the risk of some kind of future prejudice justify lifting the stay.  "Mere speculation about highly contingent possibilities of future prejudice does not demonstrate that lifting the stay is necessary to prevent undue prejudice." *In Re Refco*, 2006 WL 2337212 at \*3 (citation and internal quotation omitted); *see also 380544 Canada, Inc. v. Aspen Technology, Inc.*, 2007 WL 2049738 at \* 3 (S.D.N.Y. 2007) ( same).  The Gottex Funds' papers in support of their "emergency motion" do not even rise to the level of speculation with respect to any future risk of undue prejudice.  No such risk – none – has been shown.

Finally, despite its claim to the contrary, the "emergency motion" seeks far more than the limited, "particularized" discovery that may be permitted if the other conditions for lifting the PSLRA stay are met. Each of the 12 paragraphs of the document request begins with the words "all documents concerning," followed by broad subject descriptions, in some instances expanded even further by the infinitely elastic phrase "including without limitation."  And the proposed discovery does not stop there; the "emergency motion" seeks deposition testimony from "one or more officers" able to testify about each of these broadly framed subject categories.[4]  This would

---

[4]  The proposed discovery requests are annexed to the Gottex Funds' brief on their "emergency motion."

13

be full-blown merits discovery (and one-sided, at that) in an action that does not even belong in this Court.

Accordingly, the Gottex Funds have not established grounds for lifting the PSLRA discovery stay. On that basis alone, their request for expedited discovery must be denied.

## CONCLUSION

This action should be dismissed for improper venue, and the request for expedited discovery should be denied.

Dated: July 11, 2008

                         DEFENDANTS, MARLON QUAN
                         AND STEWARDSHIP INVESTMENT
                         ADVISORS, LLC.

                         By___ /s/ *Francis H. Morrison III*
                         Francis H. Morrison III (ct04200)
                         Denise V. Zamore (ct27549)
                         AXINN, VELTROP & HARKRIDER LLP
                         90 State House Square
                         Hartford, Connecticut 06103
                         860-275-8100 Telephone
                         860-275-8101 Facsimile
                         fhm@avhlaw.com
                         dvz@avhlaw.com

                         OF COUNSEL:

                         David S. Smith, Esq.
                         Smith Campbell, LLP
                         110 Wall Street
                         New York, NY 10005
                         212-344-1500 Telephone
                         212-344-5585 Facsimile

                         *Attorneys for Defendants Marlon Quan and*
                         *Stewardship Investment Advisors, LLC*