# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BNY AIS NOMINEES LIMITED, GOTTEX ABL (CAYMAN) LIMITED GOTTEX MATRIX ASSET FOCUSED MASTER FUND LIMITED, GOTTEX/NOMURA MARKET NEUTRAL FUND (USD) LIMITED, GOTTEX ABI MASTER FUND LIMITED, and HUDSON ABL FUND LIMITED, | C.A. No. 3:08-cv-00796-AWT |
| Plaintiffs, | |
| v. | |
| MARLON QUAN, and STEWARDSHIP INVESTMENT ADVISORS, LLC, | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE AND IN FURTHER SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR EXPEDITED DISCOVERY AND A TEMPORARY PRELIMINARY INJUNCTION

Dean M. Cordiano (Bar No. CT04300)
Erick M. Sandler (Bar No. CT25029)
Shannon D. Leger (Bar No. CT27453)
DAY PITNEY LLP
242 Trumbull Street
Hartford, Connecticut 06103

Stephen D. Poss (admitted *pro hac vice* – PHV02739)
Dahlia S. Fetouh (admitted *pro hac vice* – PHV02740)
Damian W. Wilmot (Bar No. CT22694)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109

## <u>Table of Contents</u>

Page

I.   **THE DISTRICT OF CONNECTICUT IS THE PROPER VENUE FOR THIS ACTION**..................................................................................................7

    A.   Venue Properly Lies in Connecticut Because the Defendants are Connecticut Residents and a Substantial Portion of the Transactions and Occurrences Giving Rise to the Claims Took Place in Connecticut. .........................7

    B.   Defendants Are Not Parties to the Forum Selection Clause. ....................................10

        1.   Defendants Are Not Third Party Beneficiaries of the Forum Selection Clause..........................................................................................11

        2.   Defendants are Not "Closely Related" to the Hedge Fund Sufficient to be Bound by the Forum Selection Clause in the Share Application........15

    C.   Even if Defendants Were Parties to the Forum Selection Clause, Plaintiffs' Claims Fall Outside of Its Scope. ..............................................................................18

II.  **THE PSLRA DOES NOT BAR THE EXPEDITED DISCOVERY SOUGHT BY PLAINTIFFS' EMERGENCY MOTION. ..................................................................23**

Plaintiffs BNY AIS Nominees Limited ("BNY"), acting for and on behalf of Gottex ABL (Cayman) Ltd., Gottex Matrix Asset Focused Master Fund Ltd., Gottex/Nomura Market Neutral Fund (USD) Ltd., Gottex ABI Master Fund Ltd., and Hudson ABL Fund Ltd., together with Gottex ABL (Cayman) Ltd., Gottex Matrix Asset Focused Master Fund Ltd., Gottex/Nomura Market Neutral Fund (USD) Ltd., Gottex ABI Master Fund Ltd., and Hudson ABL Fund Ltd. (the "Gottex Funds")  (collectively with BNY, "Plaintiffs") hereby submit this Memorandum in Opposition to Defendants' Motion to Dismiss for Improper Venue and in further support of Plaintiffs' Emergency Motion for Expedited Discovery and a Temporary Preliminary Injunction ("Emergency Motion"), in accordance with the Court's directions at the status conference held on July 2, 2008.

## INTRODUCTION

Defendants seek to avoid being held responsible for their actions in this Court by asking this Court to ignore the fact that venue in the District of Connecticut is proper and to dismiss this case pursuant to a forum selection clause to which Defendants are not parties.  Indeed, Defendants, a Connecticut-based investment advisory company and its manager who is a Connecticut resident, ask this Court to apply a forum selection clause that appears only in the form "share application" executed by Plaintiffs for the purchase of shares in a Bermuda-based hedge fund that purportedly is a separate and distinct entity from Defendants.  Defendants, however, are not parties to the share application, are not signatories to the share application, and do not purport to make any promises of their own under the terms of the share application.

Conceding, as they must, that they are not parties to the share application, Defendants attempt to cast themselves as so "closely related" to the Hedge Fund that the forum selection clause in the share application must extend to them.  However, they do not meet the requirements

of this test.  As explained in detail below, courts generally only extend a forum selection clause to a non-party if the non-party is so intimately bound to one of the signatories that they are essentially indistinguishable.  Defendants have failed to establish that any such relationship exists here.  Similarly, Defendants have not met their burden of demonstrating that they are intended third-party beneficiaries of the forum selection clause.  To the contrary, it is clear that the parties did not intend to extend the benefit of the forum selection clause to anyone other than the Hedge Fund and Plaintiffs.

But even if the forum selection clause did extend to Defendants – and it does not – the claims alleged against Defendants in this case do not fall within the scope of the forum selection clause because the share application is not the source of Plaintiffs' claims against Defendants. Plaintiffs' claims arise out of Defendants' willful and fraudulent refusal to properly honor Plaintiffs' valid redemption requiring payment of their full interest in the Hedge Fund, as well as Defendants' repeated misconduct in their role as the investment manager of the Hedge Fund – and not from any right or duty owed by Defendants under the share application.

There is no legitimate reason to grant Defendant's motion where, as here, Plaintiffs have filed this case in the venue that is most convenient to Defendants – the venue in which they both reside and in which most of the transactions and occurrences giving rise to the claims took place – and no forum selection agreement between the parties mandates otherwise.

Finally, Defendants have not come forward with credible arguments to apply the stay of discovery under the Private Securities Litigation Reform Act.  Indeed, many of the cases cited by Defendants directly support Plaintiffs' need for the immediate and limited discovery requested. Moreover, Defendants' statement that they would comply with the Hedge Fund's obligations pursuant to the injunction and order in the Bermuda litigation is not sufficient to satisfy

Plaintiffs' Emergency Motion.  Although the Hedge Fund has disclosed some documents and frozen certain assets in connection with the Bermuda litigation, Plaintiffs, based on their initial review of those documents, have continuing concerns as to (1) the completeness and reliability of the documents disclosed by the Hedge Fund and their contents, and (2) the risk of dissipation of assets such that any judgment in favor of Plaintiffs may not be satisfied.[1]

## FACTUAL BACKGROUND

Between 2005 and 2007, Plaintiffs purchased shares in the Stewardship Credit Arbitrage Fund, Ltd. (the "Hedge Fund") worth over $100 million dollars.  Complaint ¶ 23; *see also* Declaration of J.P. Bailey in Support of Plaintiffs' Emergency Motion for Expedited Discovery and a Temporary Preliminary Injunction ("Bailey Decl.") ¶ 16.  The Hedge Fund was managed at all times by Defendants Stewardship Investment Advisors, LLC ("Stewardship") and its managing member Marlon Quan ("Quan").  Complaint ¶¶ 16, 18; *see also* Bailey Decl. ¶ 5. During the time that Plaintiffs were invested in the Hedge Fund, Defendants engaged in repeated and willful fraudulent acts and omissions culminating in Defendants' refusal to cause the Hedge Fund to pay Plaintiffs more than $100 million the Hedge Fund owes to Plaintiffs as a result of Plaintiffs' requests to redeem their investment in the Hedge Fund and take their money out of the control of Defendants.  Complaint ¶¶ 3-6, 33-46, 55-76, 83-88; *see also* Bailey Decl. ¶¶ 17-33. As a result of Defendants' wrongful actions, Plaintiffs were left with little choice but to initiate this action.  Plaintiffs filed this action in the District of Connecticut – the district in which Defendants both reside and in which a substantial portion of the transactions and events giving rise to Plaintiffs' claims arose.[2]  Complaint ¶¶ 13-15.

---

[1]   Of course, Plaintiffs have reserved their rights in the Bermuda litigation to make further application to the Supreme Court of Bermuda as may be appropriate following their review of the disclosures made there.

[2]   At the same time, Plaintiffs filed a lawsuit against the Hedge Fund in the Supreme Court of Bermuda.  Unlike Defendants, the Hedge Fund is not a resident of Connecticut nor is it incorporated or organized under the laws

In order to purchase shares in the Hedge Fund, Plaintiffs were not required to execute any written contract with the Hedge Fund's investment manager.  Rather, Plaintiffs executed the Hedge Fund's form "Share Application."  *See* Share Application, hereinafter "Share App."[3]  The Share Application includes non-negotiable terms that govern certain aspects of the relationship between a subscriber in the Hedge Fund on the one hand and the Hedge Fund on the other hand, in order for an interested investor to purchase shares in the Hedge Fund.  *See, generally,* Share App.  The Share Application itself does not purport to extend any promises directly from Defendants to subscribers in the Hedge Fund.  Among the provisions of the Share Application is the following forum selection clause:

> *The parties* agree that any action or proceeding arising, directly, indirectly or otherwise, in connection with, out of, related to, or from, *this Share Application*, any breach hereof, or any transaction covered hereby, shall be resolved, whether by arbitration or otherwise, exclusively within Bermuda.  Accordingly, *the parties* consent and submit to the exclusive jurisdiction of the courts located within Bermuda.  *The parties* further agree that any such action or proceeding brought *by either such party* to enforce any right, assert any claim, or obtain any relief whatsoever *in connection with this Share Application* shall be commenced by such party exclusively in Bermuda.

Share App. at A-8, ¶ 15(e) (emphasis added).  Although the term "the parties" is not a defined term in the Share Application, the terms of the Share Application make clear that the only parties to the Share Application are the subscriber and the Hedge Fund:

- The signature page includes lines for signatures by the subscriber followed by a section "for use by *Fund* only," and does not provide for any signature or approval by Defendants.  Share App. at A-10 (emphasis added).

---

of any state of the United States.  Rather, the Hedge Fund is an exempted mutual fund company incorporated under the laws of Bermuda and with a principal place of business in Bermuda.  *See* Declaration of Marlon Quan, filed July 11, 2008 ("Quan Decl.") ¶ 2.  Accordingly, jurisdiction over the Hedge Fund properly lies in the courts of Bermuda.

[3]  A copy of one of the Share Applications attached to the Quan Declaration is attached hereto for the convenience of the Court as Exhibit A.

- The Share Application states that it is directed solely "To: Stewardship Credit Arbitrage Fund, Ltd."  Share App. at A-2.

- Monies paid to subscribe to the Hedge Fund are "payable to the Stewardship Credit Arbitrage Fund, Ltd."  Share App. at A-2, ¶ 1.

- Subscribers were required to send the documents required for subscription to the Hedge Fund, not to the Investment Manager.  "This completed Share Application, along with all required documents (which documents are listed on Appendix 2) should be faxed to the Administrator [of the Hedge Fund] . . . the receipt of which shall be acknowledged by the Administrator within 5 days . . . .  The original of all completed documents should then be sent by courier to [the Administrator of the Hedge Fund]."  Share App. at A-1 (emphasis added).

- The subscription is only complete after "*the Fund* has completed *its* review of your subscription application."  Share App. at A-1, B (emphasis added).

- The completed Share Application provides that it is to be delivered to the Administrator of the Hedge Fund, not to the Investment Manager.  Share App. at A-1, C.

- The Hedge Fund alone has discretion to accept or reject any subscription: "any subscriptions may be rejected in whole or in part by *the Fund* in its sole and absolute discretion."  Share App. at A-3, ¶ 1 (emphasis added).

- Subscribers were required only to declare that they had the opportunity to ask questions of and obtain information from the Hedge Fund, not the Investment Manager: "Subscriber confirms that *the Fund* has made available to Subscriber the opportunity to ask questions of, and receive answers from, *the Fund* concerning the Fund and the terms and conditions of this offering, and to obtain any additional information which *the Fund* had in *its* possession or was able to acquire without unreasonable effort or expense that was necessary to verify the accuracy of the information in the Memorandum."  Share App. at A-2, ¶ 3 (emphasis added).

- The Hedge Fund alone has the right to require additional documentation of the Subscriber:  "The undersigned understands that *the Fund* may require other documentation in addition to this Share Application, and *the Fund* reserves the right to request such documentation prior to deciding whether or not to accept this subscription."  Share App. at A-4, ¶ 10 (emphasis added).

Moreover, the only other provision of the Share Application to use the term "the parties" effectively defines "the parties" as the Subscriber and the Hedge Fund.  Paragraph 15(a) of the Share Application states:

> This Share Application represents the entire agreement of *the parties* with respect to the subject matter hereof and may not be changed or terminated, except in writing signed by *Subscriber and the Fund*.

Share App. at A-8, ¶ 15(a) (emphasis added).  Because the Share Application explicitly states that only the Subscriber and the Hedge Fund have the power to change or terminate any provision of the Share Application, and the Share Application represents the entire agreement of the parties, it follows that the Subscriber and the Hedge Fund are the only parties to the Share Application.

Although the Section titled "Understandings, Covenants, Representations and Warranties" begins with a statement that the "Subscriber hereby covenants, represents and warrants to the Fund and the Investment Manager as follows," the subsequent paragraphs draw distinctions between representations made to the Hedge Fund alone and representations made to the Hedge Fund and Investment Manager.  *See* Share App. at A-3 to A-8.  For example, paragraph 12 specifically applies the indemnification provision to the Hedge Fund and the Investment Manager for any misrepresentation by the Subscriber.  Share App. at A-4, ¶ 12 ("Subscriber agrees that it will indemnify and hold harmless the Fund *and the Investment Manager* . . . .") (emphasis added).  Additionally, paragraph 14 expressly extends confidentiality over certain documents to both the Hedge Fund and Investment Manager.  Share App. at A-7, ¶ 14.  The forum selection clause, to the contrary, includes no such reference to the Investment Manager.  Share App. at A-8, ¶ 15(e).  Indeed, the use of the term "either such party" in the forum selection clause denotes a choice between two parties – the Hedge Fund and the Subscriber – and no more.

## ARGUMENT

### I.   THE DISTRICT OF CONNECTICUT IS THE PROPER VENUE FOR THIS ACTION.

#### A.   Venue Properly Lies in Connecticut Because the Defendants are Connecticut Residents and a Substantial Portion of the Transactions and Occurrences Giving Rise to the Claims Took Place in Connecticut.

Although Defendants do not appear to challenge venue on any ground other than the forum selection clause, it is important to note that, in the absence of any applicable forum selection clause, each and every factor in the tests for proper venue resoundingly points to the District of Connecticut as the proper forum for this dispute.[4]  Because no forum selection clause in fact applies to Plaintiffs' claims, as explained in detail below, venue properly lies in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2), as well as the venue provisions of the Securities Act of 1934 and the Connecticut Unfair Trade Practices Act ("CUTPA")[5]

Venue is proper in the District of Connecticut under 28 U.S.C. § 1391(b)(1) because both defendants reside in the District of Connecticut.  Defendant Quan is not only a resident of Connecticut, but he regularly works in Greenwich, Connecticut from his offices at Stewardship,

---

[4]   Although Defendants have brought their motion as a motion to dismiss for "improper venue" under Fed. R. Civ. P. 12(b)(3), the Second Circuit has recognized that Rule 12(b)(3) may not be the appropriate procedural mechanism for dismissal when the challenge is based on a forum selection clause.  *J.B. Harris, Inc. v. Razei Bar Indus., Ltd.*, No. 98-9191, 1999 WL 319330, at *2 (2d Cir. May 4, 1999) (holding that the more appropriate approach would be under Rule 12(b)(6) (citing *Evolution Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 508 n. 6 (2nd Cir. 1998)).  Nevertheless, the analysis under either approach is the same and compels denying Defendants' motion.

[5]   Venue in this action is generally governed by 28 U.S.C. § 1391(b), which states:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

as well as the offices of his other company, Acorn Capital Group, LLC, which does business

with the Hedge Fund involving the unlawful acts alleged in the Complaint and which is also

located in Greenwich, Connecticut.  Complaint ¶ 12.  Defendant Stewardship is also a resident of

Connecticut because it is subject to personal jurisdiction in this district.[6]  Complaint ¶ 11.  There

can be no doubt that Stewardship is subject to personal jurisdiction in the District of Connecticut:

- Stewardship has its principal place of business in Greenwich, Connecticut.  *Id.*

- Stewardship appointed a Hartford, Connecticut company and the Connecticut Secretary of State as its registered agents for service of process.  *Id.*

- Stewardship sent correspondence to shareholders, including Plaintiffs, from its Greenwich, Connecticut address.  *Id.*

- Representatives of Plaintiffs met with Quan and other Stewardship representatives in Connecticut on numerous occasions from 2005 to 2008.  *Id.*

The weight of these facts is sufficient to establish proper venue in the District of Connecticut.

*See MacCallum v. New York Yankees P'ship*, 392 F. Supp. 2d 259, 262 (D. Conn. 2005) (in a

challenge to plaintiff's choice of forum, court "must take all allegations in the complaint as true

[and] . . . draw all reasonable inferences and resolve all factual conflicts in favor of the

plaintiff").

Second, and although there is no need to reach Section 1391(b)(2) where, as here,

plaintiffs have established proper venue under Section 1391(b)(1), subsection (b)(2) also dictates

that venue properly lies in the District of Connecticut.  The majority of the meetings and

communications giving rise to the claims alleged in the Complaint took place or originated in

Connecticut:

---

[6]    Stewardship "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c) (providing standard for determining venue for corporate defendants).  Although the text of Section 1391(c) refers to venue for a "corporation," its reasoning extends to limited liability companies as well.  *See, e.g., Johnsen v. Fretty & Co., LLC v. Lands South, LLC*, 526 F. Supp. 2d 307, 316 (D. Conn. 2007) (holding defendant, a limited liability company, was a "corporation" within the meaning of 28 U.S.C. § 1391(c)).

- Plaintiffs' representatives met with Quan and Stewardship representatives in Stewardship's Greenwich, Connecticut office to discuss investing in the Hedge Fund and to review the Hedge Fund's relevant documents, including the Confidential Private Placement Memorandum.  Complaint ¶ 20; *see also* Bailey Decl. ¶ 11.

- E-mails and telephone calls concerning the events alleged in the Complaint took place directly with Quan and Stewardship, who live and work in Connecticut.  *See, e.g.*, Complaint  ¶¶ 43, 44, 55, 65-67, 73; Bailey Decl. ¶¶ 21-24, 27-30; Declaration of Gabriel Bousbib in Support of Plaintiffs' Emergency Motion for Expedited Discovery and a Temporary Preliminary Injunction ("Bousbib Decl.") ¶¶ 7-8, 13, 24, 40.

- In addition to the e-mail and telephone communications to and from Connecticut, Plaintiffs sent a letter to Quan and Stewardship in Connecticut expressing concern about the in-kind distribution.  Bousbib Decl. Ex. 1.

The "substantial part" test is "liberal and may be satisfied by a communication to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action."  *Roncaioli v. Investec Ernst & Co.*, No. Civ. 3:02CV2113(SRU), 2003 WL 22244936, at *3 (D. Conn. Sept. 26, 2003) (internal quotation marks and citations omitted).[7]

Finally, venue is proper in the District of Connecticut over Plaintiffs' claims that Defendants have violated federal and state statutes.  The Securities Exchange Act of 1934 specifically provides that "[a]ny suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder . . . may be brought in any such district or *in the district wherein the defendant is found or is an inhabitant or transacts business . . .*"  15 U.S.C. § 78aa (emphasis added).  This standard has been liberally construed to mean that "any non-trivial act in the district establishes venue."  *Pension Comm. of the Univ. of Montreal Pension Plan v.*

---

[7]    Copies of unpublished decisions are attached hereto in alphabetical order as Exhibit B.

*Banc of America Securities, LLC*, 446 F. Supp. 2d 163, 176 (S.D.N.Y. 2006).[8]  Venue is also

proper in this district under the Connecticut Unfair Trade Practices Act, which provides:  "Any

person who suffers any ascertainable loss of money or property, real or personal, as a result of

the use or employment of a method, act or practice prohibited by section 42-110b, *may bring an*

*action in the judicial district in which the plaintiff or defendant resides or has his principal place*

*of business or is doing business*, to recover actual damages."  Conn. Gen. Stat. § 42-110g(a)

(emphasis added).

## B. Defendants Are Not Parties to the Forum Selection Clause.

Defendants now ask the Court to ignore the many ties to this forum and, instead, strain to

apply a forum selection clause in an application to which they are not parties to force Plaintiffs to

pursue their claims in a foreign country where Defendants may not have any assets.  There is no

cause to do so.  A forum selection clause cannot be enforced where the parties involved in the

lawsuit are not subject to the forum selection clause.  *See, e.g., Phillips v. Audio Active Ltd.*, 494

F.3d 378, 383 (2nd Cir. 2007) (setting forth the standard for the interpretation of a forum

selection clause and providing that one of the threshold inquiries is "whether the claims and

parties involved in the suit are subject to the forum selection clause").[9]  Here, Defendants

---

[8]    In *Pension Committee*, the court held that venue was proper in the Southern District of New York in an action alleging various securities and common law claims by a group of investors in a British Virgin Islands hedge fund against administrators and officers of the hedge fund.  446 F. Supp. 2d at 176.  The court held that venue in New York was proper because the valuation fraud alleged by the plaintiffs "originated and was executed from [the hedge fund's investment manager and its offices] in New York."  *Id.*  The court further relied on the fact that the defendants "communicated regularly" and "distributed misstatements" in New York.  *Id.* Similarly, venue is appropriate in this district where the fraud originated from and was executed by Quan and Stewardship in Connecticut, and where misstatements were delivered by Quan and Stewardship in Connecticut.

[9]    Defendants contend that the interpretation of the forum selection clause in this case is a matter of federal law. Def. Mem. at 6.  However, the Share Application states that it is to be governed by Bermuda law.  Share App. at A-8, ¶ 15(d) ("This Share Application . . . shall be governed by, and construed in accordance with, the internal laws of Bermuda . . . .").  Although the Second Circuit has not directly answered the question of what law should control the interpretation of a forum selection clause in a contract governed by foreign law, it has commented recently that it "cannot understand why the interpretation of a forum selection clause should be singled out for application of any law other than that chosen to govern the interpretation of the contract as a

acknowledge that they are not signatories to the Share Application.  *See* Memorandum of Law in

Support of Defendants' Motion to Dismiss This Action for Improper Venue and in Opposition to

Lifting the Statutory Stay of Discovery ("Def. Mem.") at 7.  Thus, Defendants are left to argue

that the forum selection clause applies to them despite their status as non-parties because they are

either third party beneficiaries of the forum selection clause or they are so "closely related" to the

Hedge Fund to be entitled to rely on the forum selection clause.  Def. Mem. at 8-9.  The law

makes clear, however, that Defendants have not met their burden to satisfy either test.  *See, e.g.,*

*Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.,* 56 F.3d 359, 370-71 (2d Cir.

1995); *see also Garamella for Estate of Almonte v. New York Medical College,* 23 F. Supp. 2d

153, 167 (D. Conn. 1998) (party claiming to be a third-party beneficiary has the burden of

demonstrating it has an enforceable right).[10]

> 1.   Defendants Are Not Third Party Beneficiaries of the Forum Selection
>       Clause.

Defendants' claim to be third-party beneficiaries of the forum selection clause in the

Share Application fails.  The controlling factor in determining the existence of a third-party

beneficiary of a contract is the intent of the parties to the contract.  In Connecticut, "[t]he

---

whole." *Phillips,* 494 F.3d at 386.  Because Defendants have analyzed the issues solely under federal law, Plaintiffs – without prejudice – have also proceeded to analyze these issues under federal law.  To the extent that Bermuda law controls, however, it appears to be substantially similar on the issue of whether a non-party may enforce rights of a contract to which it is not a signatory.  *See, e.g., Southern Water v. Carey,* [1985] 2 All ER 1077, at 1083 (stating the general principle under English law that "a stranger to a contract cannot in a question with either of the contracting parties take advantage of the provisions of the contract, even where it is clear from the contract that some provision on it was intended to benefit him"); *Credit Suisse First Boston (Europe) Ltd. v. MLC (Bermuda) Ltd.,* [1999] Q.B. 767, at 777-78 (refusing to apply the forum selection clause to non-parties to the contract because the language of the clause did not "suggest that it [was] intended to have an ambit beyond the parties to the Purchase Agreements themselves" and it is "black-letter law that the non-party can himself neither take the benefit nor suffer the burden of the contract").  Copies of these decisions are attached hereto as Exhibit C.  If the Court decides it should apply Bermuda law, Plaintiffs are prepared to present the Court with a Bermuda law expert upon request.

[10]   Simply because Defendants have agreed to be subject to personal jurisdiction in Bermuda does not render venue improper here.  Quan Decl., July 8, 2008 ¶ 6 (stating Defendants would submit to jurisdiction in Bermuda).

ultimate test to be applied in determining whether a person has a right of action as a third party beneficiary is whether the mutual intent of the parties to the contract was that the promisor should assume a direct obligation to the third party beneficiary." *Travelers Property & Cas. Ins. Co. v. Triton Marine Const. Corp.*, 473 F. Supp. 2d 321, 327 (D. Conn. 2007) (quoting *Pelletier v. Sordoni/Skanska Const. Co*., 264 Conn. 509, 531 (2003)).

It is not enough that a non-party might have been a foreseeable or incidental beneficiary of a contract.  *See Macedonia Church v. Lancaster Hotel Ltd.*, Civ. No. 3:05CV00153(AWT), 2008 WL 2468746, at *8 (D. Conn. June 19, 2008) (citing *Grigerik v. Sharpe*, 247 Conn. 293, 317-18 (1998).  As this Court has explained, "allowing 'foreseeable' beneficiaries to be afforded third party beneficiary status 'would significantly reduce contracting parties' ability to control, through the negotiated exchange of promises and consideration, the scope of their contractual duties and obligations.'"  *Id.* (quoting *Grigerik*, 247 Conn. at 318).

> The requirement that both contracting parties must intend to confer enforceable rights in a third party rests, in part at least, on the policy of ensuring certainty in enforcing contracts.  That is, each party to a contract is entitled to know the scope of his or her obligations thereunder.  That necessarily includes the range of potential third persons who may enforce the terms of the contract.

*Dow & Condon, Inc. v. Brookfield Dev'l Corp.*, 266 Conn. 572, 581 (2003) (quoting *Grigerik*, 247 Conn. at 311-12).

Plaintiffs executed the Share Applications in order to purchase shares in the Hedge Fund from the Hedge Fund.  Although Defendants arguably receive a benefit whenever a new investor purchases shares in the form of increased management fees paid by the Hedge Fund to Stewardship, "third-party beneficiary status is not established merely by showing that one will receive some benefit from the contract or that one is affected by it."  *See, e.g., RWP Consolidated, L.P. v. Salvatore*, 460 F. Supp. 2d 351, 357 (D. Conn. 2006) (citation omitted)

(holding that a trustee of an investment trust that was a limited partner in a hedge fund did not have standing as a third party beneficiary to assert a claim against the hedge fund's general partner for breach of a contract guaranteeing a return on the investment, even though the investment trust owned nearly all of the entity that signed the contract, where there was no mention in the contract of third party beneficiary); *see also Ahn v. Rooney, Pace Inc.*, 624 F. Supp. 368, 371 (S.D.N.Y. 1985) (refusing to find third party beneficiary status for an introducing broker in a contract between its clearing broker and its customer despite the fact that the introducing broker received a "benefit incidental to the performance of the contract . . . .").

Moreover, the fact that the Share Application refers to the Investment Manager in certain provisions does not render Stewardship or Quan a third-party beneficiary of the forum selection clause.  The Second Circuit has held that "[c]ontract language referring to third parties as necessary to assist the parties in their performance does not therefore show an intent to render performance for the third party's benefit . . . ." *Subaru Distrib. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 126 (2d Cir. 2005) (refusing to extend third-party beneficiary status to a sub-distributor in a contract between a manufacturer and distributor even though the contract explicitly provided for the appointment of sub-distributors).  Here, references to the Investment Manager in the Share Application do not evidence an intent to make Stewardship or Quan third party beneficiaries of the forum selection clause. *See, e.g.,* Share App. at A-3, A-4, A-7 at ¶ 14. Indeed, while the Share Application explicitly extends certain provisions to the Investment Manager, it notably does not do so in the forum selection clause. *See* Share App. at A-8, ¶ 15(e). Rather, the forum selection clause refers only to the "parties" to the Share Application. *Id.*

The Share Application is a form document of the Hedge Fund and the Hedge Fund certainly could have drafted the forum selection clause to include the Investment Manager if it so

intended, just as it did in paragraph 12 where it explicitly extended the subscriber's agreement to indemnify and hold harmless "the Fund and the Investment Manager."  Share App. at A-4, ¶ 12. Courts should not "stretch the language [of a contract] when the party drafting such a form contract has not included a provision it easily might have."  *Cabot Corp. v. S.S. Mormacsan*, 441 F.2d 476, 479 (2d Cir. 1971) (quoting *The Monrosa v. Carbon Black Export, Inc.*, 359 U.S. 180, 183 (1959)).[11]

Indeed, another court of this circuit has expressly refused to allow a non-party to enforce a forum selection clause in a contract even though the contract included provisions that extended certain other benefits to the non-party.  The court in *Maritime Insurance Company, Ltd. v. M/V "Sea Harmony" et al.*, No. 97 CIV 3818(SHS), 1998 WL 214777 (S.D.N.Y. May 1, 1998), made clear that simply because a contract might extend specified benefits to a non-party, that non-party is not then entitled to enforce other sections of the contract, including the forum selection clause, as a third-party beneficiary.  In *Maritime Insurance*, the plaintiff insurance company sued a defendant, Exolgan, in the Southern District of New York for damage to cargo delivered by a shipping company, which had subcontracted with Exolgan to store the cargo.  *Id.* at *1. Although the plaintiff and shipping company had entered into a contract with a forum selection clause, Exolgan was not a party to that contract.  *Id.*  Nevertheless, the plaintiff sought to bind Exolgan to the forum selection clause claiming that Exolgan was either closely-related to the dispute or a third-party beneficiary of the contract.  In support, the plaintiff pointed to, among other things, a provision in the contract that allowed the shipping company to subcontract its

---

[11] Accordingly, the preamble language on page A-3 of the Share Application stating that the "Subscriber hereby covenants, represents and warrants to the Fund and the Investment Manager as follows," cannot be read to make the Investment Manager a third-party beneficiary of each of the subsequent paragraphs where the subsequent paragraphs carve out specific paragraphs that extend to the Investment Manager.  *Kuhns Bros., Inc. v. Fushi Int'l, Inc.*, No. 3:06cv1917 (PCD), 2007 WL 2071622, at *6 ("The contract must be read and considered as a whole, so that every provision is given effect if reasonably possible.")

duties under the agreement to companies such as Exolgan and extended the "defenses and limitations of liability provided to" the shipping company in the contract to its subcontractors as well. *Id.*

The court found this argument unavailing. The court held that the fact that the contract extended certain provisions to Exolgan – specifically, the defenses and limitations of liability – did not operate to extend all clauses of the contract to Exolgan. *Id.* at *2 ("[B]y its terms, the [limitation on liability] clause does not extend the forum selection clause, or any other provision of the bill of lading, to Exolgan. For these reasons, the Court declines to find that the [limitation on liability] clause makes Exolgan a third-party beneficiary of the bill of lading in its entirety and subject to the forum-selection clause."). Similarly, Defendants' reliance here on the fact that the Share Application includes a provision that extends indemnification to Stewardship under certain circumstances, Def. Mem. at 9, does not operate to make Stewardship or Quan beneficiaries of the Share Application in its entirety or subject to the forum selection clause.[12]

> 2.    Defendants are Not "Closely Related" to the Hedge Fund Sufficient to be
>       Bound by the Forum Selection Clause in the Share Application.

Although some cases have held that a non-party may invoke a forum selection clause where the non-party is "closely-related" to one of the signatories, Defendants have not met that standard. A non-party is only so "closely-related" to a signatory that it may invoke a forum selection clause when the "non-party's enforcement of the forum selection clause is 'foreseeable' by virtue of the relationship between the signatory and the party sought to be bound." *In re Lloyd's Am. Trust Fund Litig.*, 954 F. Supp. 656, 670 (S.D.N.Y. 1997). As explained below,

---

[12]    The court in *Maritime Insurance* also refused to find that the non-party met the "closely-related" test. *See supra* at B.2.

courts have held that this standard requires that the non-party be so intimately bound to the signatory that they are effectively the same entity.

For example, in *In re Lloyd's American Trust Fund Litigation*, the court reviewed cases applying the close relationship test and found that the test was met only where the party that sought to be bound "owned and controlled the signatory of the forum selection clause." *Id.* at 670 (refusing to extend the application of a forum selection clause to a non-party where it did not own or control the signatory such that it would be foreseeable that the non-party would be entitled to enforce the clause). The court reached this conclusion despite the fact that the non-party worked closely in concert with a signatory to the contract for the benefit of the plaintiffs. *Id.*[13] Similarly, simply because Defendants work closely with the Hedge Fund, purportedly for the benefit of subscribers in the Hedge Fund, they are not so closely-related to the Hedge Fund to be entitled to be bound by the Hedge Fund's forum selection clause with its subscribers.

Indeed, in *Maritime Insurance*, the court held that the non-party must be "intimately bound" to the underlying contract in order to meet the closely-related test. 1998 WL 214777 at *2. Examining and distinguishing many of the very cases relied upon by Defendants here, the court found that the closely-related test was met in narrow instances where the non-party was the likely successor entity to the signatory or where the non-party was 99% or 100% owned by a party to the contract. *Id.* (citing *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988); *Int'l Private Satellite Partners, L.P. v. Lucky Cat Ltd.*, 975 F. Supp. 483, 485-86 (W.D.N.Y. 1997)).

---

[13]     The plaintiffs in that case were underwriting members of Lloyd's of London ("Lloyd's") who entered into trust agreements with defendant Citibank to maintain certain trust funds. 954 F. Supp. at 660. The contract between the plaintiffs and Lloyd's included a forum selection clause which Citibank sought to enforce, claiming that it was a non-party closely related to Lloyd's. *Id.* at 669. The court rejected that argument.

Indeed, many of the cases cited by Defendants are squarely distinguishable on their facts – facts that Defendants notably omit in their Memorandum. For example, in *International Private Satellite Partners, L.P. v. Lucky Cat Ltd.,* cited on pages 7-8 of Defendants' Memorandum, the court found that the non-party was closely-related to the signatory to the forum selection clause because the non-party had effectively merged with the signatory and become the successor to the signatory. 975 F. Supp. 483, 486-87 (W.D.N.Y. 1997). These facts bear no resemblance to our case, where the Hedge Fund continues to operate and Defendants are not successors to the contracts of the Hedge Fund.

In *Hugel v. Corporation of Lloyd's,* cited at page 8 of Defendants' Memorandum, the court found the closely-related test met where the non-parties were 99% and 100% owned and controlled by a signatory to the contract. 999 F.2d at 210; *see also Manetti-Farrow*, 858 F.2d at 511, 514 n. 5 (finding test met where non-party was the 80% owner of the signatory). There is no suggestion here that Defendants are somehow owned and controlled by the Hedge Fund.

In *Direct Mail Production Services Ltd. v. MBNA Corp.*, cited on page 8 of Defendants' Memorandum, the court held that the closely-related test is analogous to the test for a third-party beneficiary and requires that the non-party be an intended beneficiary of the forum selection clause and that the extension of the benefit to the non-party be a "motivating cause" of making the contract. No. 99 Civ. 10550(SHS), 2000 WL 1277597, at *3 (S.D.N.Y. Sept. 7, 2000). The court there extended the forum selection clause in that case to a non-party who was a corporate subsidiary of a signatory. *Id.* The court looked to the terms of the contract and found that the terms explicitly created a benefit in favor of the non-party giving the plaintiff "reason to know that one of the reasons motivating [the signatory] to enter the contract was a desire to confer a

17

pecuniary benefit on related . . . companies." *Id.* at *4. Here, extending a benefit to Defendants was not the motivating cause of the share application between the Hedge Fund and Plaintiffs.

Neither Stewardship nor Quan has met the close relationship test. Stewardship and Quan are not owned by the Hedge Fund, are not successors to the Hedge Fund, are not subsidiaries of the Hedge Fund, and are not otherwise so intimately bound to the Hedge Fund that they can or should be bound by the Hedge Fund's forum selection clause. Indeed, Stewardship and the Hedge Fund purport to be separate entities with separate offices. Complaint ¶ 11; *see also* Bailey Decl. ¶ 8; Quan Decl. ¶ 2; Exhibit 2 to Bailey Decl. (PPM) at (ii). The Hedge Fund has its own Board of Directors, comprised not just of Quan, but of three other individuals including two purportedly "independent" directors. Complaint ¶ 17; *see also* Exhibit 2 to Bailey Decl. (PPM) at 3, 26-28; Exhibit 1 to Bailey Decl. (Bye-laws) at, *e.g.*, ¶ 44.2. Although Stewardship and Quan certainly provide significant services to the Hedge Fund, without more they cannot avail themselves of the Hedge Fund's forum selection clause in its Share Applications with Plaintiffs.

C.     **Even if Defendants Were Parties to the Forum Selection Clause, Plaintiffs' Claims Fall Outside of Its Scope.**

Assuming *arguendo* that Defendants are beneficiaries of the forum selection clause, Plaintiffs' claims against Quan and Stewardship do not originate from the Share Application and thus fall outside of the scope of the forum selection clause. Without reference to any legal support whatsoever, Defendants baldly assert that because each of Plaintiffs' claims are connected in some way to their investment in the Hedge Fund, and because each of Plaintiff's investment transactions were initiated by their execution of the Share Application, then *ipso factum* Plaintiffs' claims arise from the Share Application and are therefore covered by the forum

selection clause.  *See* Def. Mem. at p. 7.  While Defendants' analysis is quite simple, it fails to acknowledge, let alone follow, settled precedent in this Circuit.

In *Phillips v. Audio Active Limited,* 494 F.3d 378 (2d Cir. 2007), the Second Circuit held that the proper analysis for the Court is to determine whether the Plaintiffs' action originates from the Share Application or, stated another way, whether in the instant proceeding, Plaintiffs assert rights or duties under the Share Application.  If the Court answers this question in the negative, as it should, it should also conclude that Plaintiffs' claims do not arise out of the Share Application and are not within the scope of the forum selection clause.

In *Phillips,* the Second Circuit concluded that certain claims fell outside of the scope of the applicable forum selection clause despite being related to the business relationship between the parties.  There, plaintiff, a musician, entered into a recording contract with defendant, a record company, under which plaintiff agreed to compose music recordings and defendant agreed to pay the costs of production and to pay royalties and a royalties advance to plaintiff.  *Id.* at 382.  The recording contract contained a choice of law and forum selection clause that read: "[t]he validity[,] construction[,] and effect of this agreement and any or all modifications hereof shall be governed by English Law and any legal proceedings that may arise out of it are to be brought in England." *Id.*.  The parties produced two albums under the recording contract.

Following the release of the second album, plaintiff brought an action against defendant and others in the Southern District of New York, alleging, *inter alia,* that defendant (i) breached the recording contact by failing to pay him the full amount of the royalties advance in connection with the first album and (ii) violated the Copyright Act by infringing his copyrights when it released the second album against his objections.  *Id.* at 382-83.  Plaintiff also asserted state common law claims premised on defendant's allegedly improper infringement of his copyrights.

19

*Id.* at 392.  Defendant moved to dismiss plaintiff's complaint on the basis of the forum selection clause in the recording contract, asserting that the proper venue for the action was in England. *Id.* at 382.  The district court granted defendant's motion, holding that because plaintiff's claims arose out of the recording contract the forum selection clause required him to bring such claims in England.  *Id.*

On appeal, the Second Circuit held that the district court had erred in dismissing plaintiff's copyright claim.  *Id.* at 382.  The Second Circuit found that while the forum selection clause of the recording contract applied to plaintiff's breach of contract claim – as it was premised on defendant's alleged breach of the terms and duties set forth in the recording contract – the clause did not so clearly apply to plaintiff's copyright claim.  *Id.* at 387-388.  The Second Circuit wrote that when ascertaining the applicability of a forum selection clause to particular claims, courts must examine the substance of those claims and determine whether they relate to the "precise language of the clause."  *Id.* at 389.

Focusing on the precise language of the forum selection clause, the Second Circuit concluded that the language "arise out of" found in the forum selection clause meant that only those proceedings "originating" from the recording contract are covered by the forum selection clause.  *Id.* at 389-90.  The court next determined whether plaintiff's copyright claims originated from the recording contract.  *Id.* at 390.  Although the business relationship between the parties was initiated by the recording contract, the court found that plaintiff did not rely on the recording contract to establish his ownership of the copyrights but on his authorship of the work.  *Id.* at 390.  The court concluded that plaintiff's "copyright claims [did] not arise out of the contract because [he] has asserted no rights or duties under that contract" and, accordingly, the forum

20

selection clause did not preclude plaintiff from bringing his copyright claim and related common law claims in New York.  *Id.* at 390-92.

Section 15(e) of the Share Application states in part:

> The parties agree that any action or proceeding arising, directly, indirectly or otherwise, in connection with, out of, related to, or from, this Share Application, any breach hereof, or any transaction covered hereby, shall be resolved, whether by arbitration or otherwise, exclusively within Bermuda.

Share App. at A-8, ¶ 15(e) (emphasis added).  Accordingly, based on the standard of review articulated by the Second Circuit in *Phillips,* to determine whether the forum selection clause in the Share Application requires Plaintiffs to bring their claims in Bermuda, this court must analyze whether Plaintiffs' action arises out of or is related to the rights or duties under the Share Application.  *See also Direct Mail,* 2000 WL 1277597, at *6 (holding that when determining applicability of forum selection clause, relevant inquiry is "whether the plaintiff's claims depend on rights and duties that must be analyzed by reference to the contractual relationship" between the parties).

The instant action does not arise from nor is it related to the Share Application as Plaintiffs do not assert any rights or duties thereunder.  The Share Applications basically set forth (i) the number of voting, redeemable, and participating Class A shares Plaintiffs bought from the Hedge Fund; (ii) the subscription price for the Class A shares in the Hedge Fund; (iii) that the terms of the Hedge Fund's Private Placement Memorandum would govern the Class A shares; and (iv) the manner of payment for the shares to the Hedge Fund.  *See, generally,* Share App. None of Plaintiffs' claims is premised under or related to any of the rights and duties set forth in the Share Applications.  Plaintiffs do not claim, for example, that they purchased 100,000 Class A shares but that the Hedge Fund only gave them 10,000 shares.  Nor do Plaintiffs claim that Defendants fraudulently induced them to enter into the Share Applications with the Hedge Fund.

21

Rather, Plaintiffs' claims are premised on Defendants' repeated, willful and fraudulent conduct during the course of the business relationship between Plaintiffs and Defendants. Complaint ¶¶ 3-6, 33-46,55-76, 83-88;  *see Gen. Env't Science Corp. v. Horsfall,* 753 F. Supp. 664, 667-68 (N.D. Ohio 1990) (denying motion to dismiss premised on forum selection clause where claims were not based on parties' contract but arose out of parties on-going business relationship); *see also Lambert v. Kysar,* 983 F.2d 1110, 1121-22 (1st Cir. 1993) (holding that tort claims must involve same operative facts as parallel claims for breach of contract to be covered by forum selection clause); *Hugel,* 999 F.2d at 209 (tort claims covered by forum selection clause only based on duties arising from contract); *Manetti-Farrow,* 858 F.2d at 514 (holding that "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract" and ultimately concluding that forum selection clause applied to plaintiff's claims because they related to rights and duties enumerated in contract and cannot be adjudicated without analyzing whether parties were in compliance with contract); *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 708 F.2d 190, 203 (3rd Cir. 1983) (holding that forum selection clause will encompass tort claims only if such claims "ultimately depend on the existence of a contractual relationship" between the parties).[14]

The fact that Defendants' fraudulent conduct concerned Plaintiffs' Class A shares in the Hedge Fund and Plaintiffs' redemptions of those shares is not enough to conclude that Plaintiffs' claims "arise out of" or are "related to" the Share Application.  Because Plaintiffs' claims are independent from any right or duty found in the Share Application, the forum selection clause does not apply.  Venue, therefore, is proper in this district.

---

[14]   Indeed, Plaintiffs seek damages directly from Defendants for more than just the redemption price owed to Plaintiffs.  Plaintiffs also seek damages arising out of, for example, Defendants breach of the Management Fee Agreement and the unjust enrichment of Defendants through their retention of excess management fees. *See, e.g.,* Complaint ¶¶ 164-166.

## II.    THE PSLRA DOES NOT BAR THE EXPEDITED DISCOVERY SOUGHT BY PLAINTIFFS' EMERGENCY MOTION.

Defendants have failed to respond to the arguments in Plaintiffs' Emergency Motion explaining why the Private Securities Litigation Reform Act's (the "PSLRA") automatic stay of discovery provision does not preclude the Court from ordering expedited, limited discovery in this case.  As stated previously, the PSLRA's automatic stay of discovery provision does not apply here because the particularized discovery sought is necessary to prevent undue prejudice.[15] Emergency Motion at 26-28.  Specifically, Plaintiffs are seeking narrow discovery into the financial status and assets of the Hedge Fund because of legitimate concerns that the Hedge Fund's assets may be dissipated, lost, paid out to other redeeming investors, or rolled into longer-maturing or more risky investments, all in an effort to determine if further preliminary injunction proceedings are necessary.[16]  Emergency Motion at 26.

As discussed in detail in Plaintiffs' Emergency Motion, it appears that the Hedge Fund's assets are diminishing rapidly and that, by the time of trial, the Hedge Fund may be unable to pay the Redemption Price owed to Plaintiffs.  Emergency Motion at 27.  Plaintiffs provided the Court with affidavits and verified documents setting forth the facts that give rise to Plaintiffs' concerns. *See, e.g.*, Bousbib Decl. ¶¶ 33-42.  Defendants' motion to dismiss and limited opposition to the Emergency Motion, as well as Quan's declaration submitted therewith, fail to rebut any of the

---

[15]    The PSLRA provides that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, *unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.*"  15 U.S.C. §78u-4(b)(3)(B) (emphasis added).

[16]    Defendants' arguments that (i) Plaintiffs do not allege that evidence will be destroyed absent expedited discovery; and (ii) "undue prejudice" can not be demonstrated by an inability to gather evidence for settlement negotiations or to plan litigation strategy; an inability to use documents produced in the Bermuda case; or the fact that Bermuda does not have an analogous automatic stay of discovery provision are completely beside the point and fail to respond to the evidence presented by Plaintiffs showing that the assets of the Hedge Fund owed to Plaintiffs will be dissipated or lost before Plaintiffs can recoup the $100 million owed to them.

facts proffered by Plaintiffs.  The record for the purposes of the Court's determination of the applicability of the PSLRA's automatic stay of discovery provision is therefore undisputed.

The undisputed record shows, for example, that Quan admitted that as of March 31, 2008, the Hedge Fund's gross assets had diminished significantly in a short period of time.  *See* Bousbib Decl. ¶¶ 35, 38.  It is also undisputed that a "large number" of other shareholders in the Hedge Fund have submitted redemption requests seeking payments of their investment interests in the Hedge Fund further diminishing the Hedge Fund's assets.  *Id.* ¶ 41.  In light of these undisputed facts, combined with the fact that Defendants decided to go against the Hedge Fund's stated intention to satisfy redemption requests in cash and instead purporting to convey seemingly worthless "participations" in risky assets, Plaintiffs' concerns about the financial status of the Hedge Fund and the Hedge Fund's ability to satisfy Plaintiffs' redemptions in full are entirely reasonable.

As stated previously, courts in this Circuit define "undue prejudice" to mean improper or unfair treatment amounting to something less than irreparable harm.  Emergency Motion at 27; *see In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 182 (S.D.N.Y. 2004).  It is axiomatic that if the Hedge Fund cannot satisfy Plaintiffs' redemptions worth over $100 million in full, such a result would amount to irreparable injury let alone "undue prejudice."  The undisputed facts demonstrate that the assets of the Hedge Fund may be dissipating, putting Plaintiffs in danger of never receiving a full satisfaction of their redemptions if successful on the merits of their claims at trial.  Bousbib Decl. ¶¶ 33-42.

Plaintiffs need expedited and particularized discovery to determine whether preliminary injunctive relief through the trial of this case is necessary to prevent assets from dissipating before judgment.  Courts have found "undue prejudice" under similar facts in other cases.

Emergency Motion at 26-28; *see, e.g., In re WebSecure, Inc., Sec. Litig.*, Civ. A. No. 97-10662-GAO, 1997 WL 770414, at *3-4 (D. Mass. Nov. 26, 1997) (motion for limited expedited discovery granted to allow plaintiff discovery on whether defendant's assets were dissipating); *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305-06 (S.D.N.Y. 2002) (lifting PSLRA stay of discovery because plaintiff faced "the very real risk that it [would] be left to pursue its action against defendants who no longer have anything or at least much to offer" in light of settlement discussion that was scheduled to begin shortly with plaintiffs in another proceeding); *In re Williams Sec. Litig.,* No. 02-CV-72H (M), 2003 WL 22013464, at *1 (N.D. Okla. May 22, 2003) (lifting PSLRA stay where defendant was "fighting for its corporate life by selling assets, reducing its work force and settling disputes with others").

As the undisputed record demonstrates, Plaintiffs, as a result of their reasonable concerns regarding the Hedge Fund's financial status, requested information concerning the assets of the Hedge Fund on numerous occasions only to be told that Defendants and the Hedge Fund refused to provide this information, stating they would only produce such information during the course of discovery or by order of the Court. Bailey Decl. ¶ 28. And although the Hedge Fund has provided some information to Plaintiffs in the Bermuda litigation and has frozen certain assets of the Hedge Fund pursuant to a court order in that litigation, Plaintiffs have continuing concerns based on the disclosures made by the Hedge Fund concerning the completeness of the Hedge Fund's disclosures and the risk of dissipation of assets. Moreover, the Bermuda litigation only ordered disclosures by the Hedge Fund, not by Defendants. Accordingly, Plaintiffs will be "unduly prejudiced" without the relief sought here.

There is no legitimate argument that Plaintiffs' proposed discovery requests are not particularized and are too broad in scope. As Defendants' emphasize in footnote 3 of their brief,

the discovery sought here is substantially identical to the information that the Bermuda Supreme Court ordered the Hedge Fund to produce to Plaintiffs in the Bermuda litigation, but the information sought here comes from Defendants' files in Connecticut.  Assuming that the Hedge Fund attempted to fully comply with the Bermuda Supreme Court's June 27, 2008 and June 30, 2008 orders, the Hedge Fund provided such information to Plaintiffs in the Bermuda litigation in only seven days.  At a minimum, Defendants should be able to provide Plaintiffs the information the Hedge Fund provided in the Bermuda litigation as Defendants undoubtedly have access to the same information the Hedge Fund does.  The Court should accordingly find that the PSLRA's stay of discovery provision is inapplicable here and allow Plaintiffs to conduct the expedited discovery requested.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Court deny Defendants' Motion to Dismiss for Improper Venue and hold that the PSLRA stay of discovery does not apply to this action.

Dated: July 16, 2008                    Respectfully submitted,

                                        BNY AIS NOMINEES LIMITED, GOTTEX ABL
                                        (CAYMAN) LIMITED GOTTEX MATRIX ASSET
                                        FOCUSED MASTER FUND LIMITED,
                                        GOTTEX/NOMURA MARKET NEUTRAL FUND
                                        (USD) LIMITED, GOTTEX ABI MASTER FUND
                                        LIMITED, and HUDSON ABL FUND LIMITED,

                                        *By their attorneys*


                                          /s/ Dean M. Cordiano
                                        Dean M. Cordiano (Bar No. CT04300)
                                        Erick M. Sandler (Bar No. CT25029)
                                        Shannon D. Leger (Bar No. CT27453)
                                        DAY PITNEY LLP
                                        242 Trumbull Street
                                        Hartford, Connecticut 06103
                                        Phone: (860) 275-0100
                                        Fax:    (860) 275-0343
                                        dmcordiano@daypitney.com
                                        sdleger@daypitney.com
                                        emsandler@daypitney.com

                                        Stephen D. Poss (admitted *pro hac vice* – PHV02739)
                                        Dahlia S. Fetouh (admitted *pro hac vice* – PHV02740)
                                        Damian W. Wilmot (Bar No. CT22694)
                                        GOODWIN PROCTER LLP
                                        Exchange Place
                                        Boston, MA 02109
                                        617.570.1000 (tel.)
                                        617.523.1231 (fax)
                                        sposs@goodwinprocter.com
                                        dwilmot@goodwinprocter.com
                                        dfetouh@goodwinprocter.com

## <u>CERTIFICATION</u>

I hereby certify that on this 16th day of July, 2008, the foregoing Plaintiffs'
Memorandum in Opposition to Defendants' Motion to Dismiss for Improper Venue and In
Further Support of Plaintiffs' Emergency Motion for Expedited Discovery and a Temporary
Preliminary Injunction was filed electronically and served by mail on anyone unable to accept
electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the
Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF
system.

/s/ Shannon D. Leger
Shannon D. Leger (CT27453)

LIBA/1914217.6