### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
-----------------------------------x
BNY AIS NOMINEES LIMITED, GOTTEX ABL  :
(CAYMAN) LIMITED, GOTTEX MATRIX ASSET:
FOCUSED MASTER FUND LIMITED,          :
GOTTEX/NOMURA MARKET NEUTRAL FUND     :
(USD) LIMITED, GOTTEX ABI MASTER FUND:
LIMITED, and HUDSON ABL FUND          :
LIMITED,                              :
                                      :
                      Plaintiffs,     :
                                      :
v.                                    : Civil No. 3:08CV00796(AWT)
                                      :
MARLON QUAN and STEWARDSHIP           :
INVESTMENT ADVISORS, LLC,             :
                                      :
                      Defendants.     :
-----------------------------------x
```

### RULING ON DEFENDANTS' MOTION TO DISMISS

BNY AIS Nominees Limited ("BNY"), acting for and on behalf of Gottex ABL (Cayman) Limited, Gottex Matrix Asset Focused Master Fund Limited, Gottex/Nomura Market Neutral Fund (USD) Limited, Gottex ABI Master Fund Limited, and Hudson ABL Fund Limited (collectively the "Gottex Funds"), bring this case against Marlon Quan ("Quan") and Stewardship Investment Advisors, LLC ("SIA").

Quan and SIA have moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue. For the reasons set forth below, the motion is being granted.

### I. FACTUAL BACKGROUND

Between 2005 and 2007, the Gottex Funds purchased shares in the Stewardship Credit Arbitrage Fund, Ltd. (the "Fund" or the

"Hedge Fund") worth over $100 million.  BNY has been the "nominee" for the Gottex Funds, "holding their investments and assets, including [their] Class A shares in the Hedge Fund, and redemption proceeds thereof."  (Compl. (Doc. No. 1) ¶ 9.)  The Gottex Funds contend that they invested in the Fund in reliance upon the Fund's July 1, 2005 Confidential Private Placement Memorandum ("PPM").

The PPM discloses that SIA is the Investment Manager of the Fund, and that Quan is one of the four Directors of the Fund. The PPM contains the following summary with respect to SIA and the Directors of the Fund:

> **The Investment Manager**
> Stewardship Investment Advisors LLC, a Delaware, U.S.A. limited liability company, will make all investment decisions on behalf of the Fund under the direction of Mr. Marlon Quan, its sole member.  Mr. Quan is also the President and sole member of Acorn.  For a biography describing Mr. Quan, see "The Investment Manager."
>
> **Management**
> The Fund's administrative affairs are managed under the supervision of its Directors, Mr. Marlon Quan, Mr. Thomas H. Davis, Mr. Gustav E. Escher III and Ms. Jennifer Kelly. For biographies describing Messrs. Davis, Escher, and Ms. Kelly, see "Operation of the Fund."

(Decl. of J.P. Bailey . . . (Doc. No. 27), Ex. 2 at 3.)  The PPM also discusses the management fees and performance fees that are payable to SIA, as the Investment Manager, and the procedure for voluntary redemptions, the Fund's right to make mandatory redemptions, and the manner in which redemption payments will be

-2-

made.  At all relevant times, SIA and Quan, SIA's managing

member, managed the Fund.

In connection with the purchase of shares in the Fund, BNY

executed Share Applications on behalf of the Gottex Funds

"pursuant to the terms of the [PPM]."  (<u>Compl.</u> ¶ 22.)  The form

of the Share Application is attached to the PPM as an exhibit.

The only parties to each Share Application are the subscriber and

the Fund.  One part of the Share Application begins:

> **UNDERSTANDINGS, COVENANTS, REPRESENTATIONS, AND WARRANTIES.**
> Recognizing that the Fund and the Investment Manager rely
> on the information and on the representations set forth
> herein, Subscriber hereby covenants, represents and
> warrants to the Fund and the Investment Manager as
> follows:

(Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss for Improper Venue

. . . ("Pls.' Opp'n") (Doc. No. 46), Ex. A at A-3.)  There are 15

sections of understanding, covenants, representations and/or

warranties.

Three of the sections specifically refer to the Investment

Manager.  Section 11 requires the subscriber to give the Fund and

the Investment Manager notice of certain events.  Section 12

provides:

> Subscriber agrees that it will indemnify and hold
> harmless the Fund and the Investment Manager and each of
> their affiliates and their officers, directors and
> employees from and against any and all direct and
> consequential loss, damage, liability, cost or expense,
> including reasonable attorneys' and accountants' fees,
> which the Fund or any one of them may incur by reason of

or in connection with any misrepresentation made by Subscriber or any of Subscribers' agents, any breach of any representation or warranty of Subscriber or the failure by Subscriber to fulfill any covenants or agreements under this Share Application.

(Pls.' Opp'n, Ex. A at A-4, § 12.)  Section 14 provides, <u>inter alia</u>, that the subscriber will maintain the confidentiality of confidential information disclosed to it about the Fund or any other fund or account managed by SIA.  (<u>Id.</u>, Ex. A at A-7, § 14.)  The forum selection clause, contained in Section 15(e), makes no reference to SIA or the Investment Manager.  Rather, it refers to "the parties."  It provides:

> The parties agree that any action or proceeding arising, directly, indirectly or otherwise, in connection with, out of, related to, or from, this Share Application, any breach hereof, or any transaction covered hereby, shall be resolved, whether by arbitration or otherwise, exclusively within Bermuda.  Accordingly, the parties consent and submit to the exclusive jurisdiction of the courts located within Bermuda.  The parties further agree that any such action or proceeding brought by either such party to enforce any right, assert any claim, or obtain any relief whatsoever in connection with this Share Application shall be commenced by such party exclusively in Bermuda.

(<u>Id.</u>, Ex. A at A-8, § 15(e).)

When the Gottex Funds subscribed to purchase additional shares after their initial investment, they executed a form Additional Subscription Request.  Each Additional Subscription Request provided that the subscriber "restates all of the declarations, acknowledgments, representations, warranties,

-4-

agreements, and understandings made in the undersigned's original
Share Application as if they were made on the date hereof."
(Decl. of Marlon Quan ("Quan Decl.") (Doc. No. 41) ¶ 4; see also
Quan Decl., Ex. B.)

According to the PPM, the Fund, whose offices are in
Hamilton, Bermuda, is a mutual fund company incorporated under
the laws of Bermuda.  SIA is a Delaware limited liability company
whose officers are located in Connecticut.  Quan resides in
Connecticut.

On May 23, 2008, the plaintiffs commenced this action
against SIA and Quan.  In the Complaint, the plaintiffs set forth
claims for fraud (Count I), fraud in the inducement (Count II),
intentional misrepresentation (Count III), negligent
misrepresentation (Count IV), tortious interference with
contractual relations (Count V), tortious interference with
business expectations (Count VI), breach of contract (Count VII),
conversion (Count VIII), breach of the covenant of good faith and
fair dealing (Count IX), promissory estoppel (Count X),
violations of Section 10(b) of the Securities Exchange Act of
1934 and Rule 10b-5 (Count XI), a declaratory judgment (Count
XII), violation of the Connecticut Unfair Trade Practices Act
(Count XIII), and unjust enrichment (Count XIV).  In describing
the nature of the action, the Complaint alleges inter alia, that:

-5-

> During the time that the Gottex Funds were shareholders
> in the Hedge Fund, Defendants repeatedly, willfully, and
> fraudulently misled the Gottex Funds and refused to live
> up to their agreements.  Specifically, Defendants
> deliberately tried to avoid the consequences of allowing
> the Gottex Funds to exercise their right to redeem their
> Class A shares in the Hedge Fund by willfully,
> fraudulently, and deliberately (i) misleading the Gottex
> Funds into believing that Defendants would lower the fees
> charged to the Gottex Funds, and (ii) misleading the
> Gottex Funds into believing that Defendants would cause
> the Hedge Fund to redeem the Gottex Funds in cash if the
> Gottex Funds delayed their redemptions, all in a blatant
> attempt by Defendants to continue collecting fees and to
> avoid liquidating assets of the Hedge Fund.  Once
> Defendants finally purported to pay the price owed to the
> Gottex Funds for their Class A shares, Defendants
> purported to convey so-called "participation notes" that
> are defective and fraudulent instruments and that fail
> entirely to meet the requirements of the redemption
> provisions of the Hedge Fund's Bye-laws and Private
> Placement Memorandum.

(Compl. ¶ 3.)  At or around the same time the plaintiffs

commenced this action, they commenced litigation against the Fund

in the Supreme Court of Bermuda.  In the Bermuda action, the

plaintiffs claim that the Fund breached its obligation to pay the

plaintiffs the redemption price for their shares in the Fund.

## II.  **LEGAL STANDARD**

In deciding a Rule 12(b)(3) motion to dismiss based on

improper venue, "[t]he court must take all allegations in the

complaint as true, unless contradicted by the defendants'

affidavits, and [w]hen an allegation is so challenged [a] court

may examine facts outside the complaint to determine whether

venue is proper."[1]  <u>Indymac Mortgage Holdings, Inc. v. Reyad</u>, 167
F. Supp. 2d 222, 237 (D. Conn. 2001) (internal quotation marks
and citation omitted).  Furthermore, "[t]he court must draw all
reasonable inferences and resolve all factual conflicts in favor
of the plaintiff," who has "the burden of showing that venue in
the forum is proper."  <u>Id.</u>  If the venue is not proper, the
district court "shall dismiss, or if it be in the interest of
justice, transfer such case to any district or division in which
it could have been brought."  28 U.S.C. § 1406(a) (2000).
"Whether dismissal or transfer is appropriate lies within the
sound discretion of the district court."  <u>Minnette v. Time Warner</u>
997 F.2d 1023, 1026 (2d Cir. 1993).

**III.  <u>DISCUSSION</u>**

"In the absence of an applicable choice of law provision, it
is well established in this Circuit that the rule set out in <u>M/S</u>

---

[1]The defendants bring their motion to dismiss pursuant to
Rule 12(b)(3).  The plaintiffs cite <u>J.B. Harris, Inc. v. Razei
Bar Indus., Ltd.</u>, 181 F.3d 82 (2d Cir. 1999) (unpublished
opinion) for the proposition that when a motion to dismiss is
based on a forum selection clause, Rule 12(b)(3) may not be the
appropriate procedural mechanism.  The Second Circuit has more
recently stated that "[t]he Supreme Court has not specifically
designated a single clause of Rule 12(b) as the 'proper
procedural mechanism to request dismissal of a suit based upon a
valid forum selection clause,' nor have we." <u>Asoma Corp. v. SK
Shipping Co., Ltd.</u>, 467 F.3d 817, 822 (2d Cir. 2006) (quoting <u>New
Moon Shipping Co., Ltd. v. MAN B & W Diesel AG</u>, 121 F.3d 24, 28
(2d Cir. 1997)).  Therefore, the court considers the motion under
the rule pursuant to which the defendants bring it.

Bremen applies to the question of enforceability of an apparently
governing forum selection clause, irrespective of whether a claim
arises under federal or state law."  Phillips v. Audio Active
Ltd., 494 F.3d 378, 384 (2d Cir. 2007).  While choice of law
clauses are presumed valid, "our precedent indicates that federal
law should be used to determine whether an otherwise mandatory
and applicable forum clause is enforceable under Bremen."  Id.
Moreover, "choice of law provisions generally implicate only the
substantive law of the selected jurisdiction."  Id.  "Questions
of venue and the enforcement of forum selection clauses are
essentially procedural, rather than substantive, in nature."
Jones v. Weibrecht, 901 F.2d 17, 19 (2d Cir. 1990).[2]

In deciding whether an action should be dismissed based on a
forum selection clause, the Second Circuit has used a four-part
analysis.

> The first inquiry is whether the clause was reasonably
> communicated to the party resisting enforcement.  See,
> e.g., D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103
> (2d Cir. 2006).  The second step requires us to classify
> the clause as mandatory or permissive, i.e., to decide
> whether the parties are required to bring any dispute to
> the designated forum or simply permitted to do so.  See
> John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps.
> & Distribs. Inc., 22 F.3d 51, 53 (2d Cir. 1994).  Part
> three asks whether the claims and parties involved in the

---

[2]The Share Application states that it is to be governed by
Bermuda law.  However, the parties have briefed the issues under
federal law, and the court likewise analyzes the issues presented
by this motion under federal law.

suit are subject to the forum selection clause.  <u>See,</u>
<u>e.g.,</u> <u>Roby v. Corp. of Lloyd's</u>, 996 F.2d 1353, 1358-61
(2d Cir. 1993).
    If the forum clause was communicated to the
resisting party, has mandatory force and covers the
claims and parties involved in the dispute, it is
presumptively enforceable. <u>See</u> <u>id.</u> at 1362-63.  The
fourth, and final, step is to ascertain whether the
resisting party has rebutted the presumption of
enforceability by making a sufficiently strong showing
that "enforcement would be unreasonable or unjust, or
that the clause was invalid for such reasons as fraud or
overreaching." <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407
U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)
(establishing federal standard relating to enforcement of
forum clauses applicable in admiralty and international
transactions); <u>see</u> <u>Bense v. Interstate Battery Sys. of</u>
<u>Am., Inc.</u>, 683 F.2d 718, 721 (2d Cir. 1982) (applying
<u>Bremen</u> standard to contractual dispute between domestic
parties in non-admiralty context).

<u>Phillips</u>, 494 F.3d at 383-84.

With respect to the first inquiry, it is not disputed here
that the plaintiffs knew about the forum selection clause.  With
respect to the second step, the clause is mandatory.  "The
general rule in cases containing forum selection clauses is that
'[w]hen only jurisdiction is specified[,] the clause will
generally not be enforced without some further language
indicating the parties' intent to make jurisdiction exclusive.'"
<u>John Boutari & Son v. Attiki Imps.</u>, 22 F.3d 51, 52 (2d Cir. 1994)
(quoting <u>Docksider, Ltd. v. Sea Tech., Ltd.</u>, 875 F.2d 762, 764
(9th Cir. 1989)).  Some form of the word "exclusive" as it
relates to jurisdiction or the place where the action may be
brought appears in Section 15(e) of the Share Application three

-9-

times.  There is no question that the parties are required to
bring any action or proceeding covered by the clause in Bermuda.

The most hotly contested issue for purposes of this motion is
the third step in the analysis: "whether the claims and parties
involved in the suit are subject to the forum selection clause."
Phillips, 494 F.3d at 383.  The court concludes that both the
parties and the claims in the instant action are subject to the
forum selection clause.

A party does not have to be a signatory to the contract to
be subject to a forum selection clause.  "A non-party to a
contract may invoke a contractual forum selection clause if the
non-party is 'closely related' to one of the signatories . . .
such that 'the non-party's enforcement of the . . . clause is
foreseeable by virtue of the relationship between the signatory
and the party sought to be bound.'"  Morag v. Quark Expeditions,
Inc., No. 3:07-cv-1062 (PCD), 2008 WL 3166066, at *5 (D. Conn.
Aug. 5, 2008) (quoting Cfirstclass Corp. v. Silverjet PLC, 560 F.
Supp. 2d 324, 328 (S.D.N.Y. 2008)).  "In order to bind a non-
party to a forum selection clause, the party must be 'closely
related' to the dispute such that it becomes 'foreseeable' that
it will be bound."  Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209
(7th Cir. 1993) (citations omitted).  "[W]here the alleged
conduct of the nonparties is closely related to the contractual

-10-

relationship, 'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.'" Moraq, 2008 WL 3166066, at *5 (quoting Holland Am. Line Inc. v. Wärtsilä N. Am., Inc., 485 F.3d 450, 456 (9th Cir. 2007)).

   The determination as to whether the closely-related test has been satisfied is one that requires an inquiry that is highly fact-specific.  One situation where a non-party may invoke a contractual forum selection clause, or it can be invoked against the non-party, is where the non-party is a third-party beneficiary of the contract.  In Hugel, the court observed:

> Plaintiffs argue that the court must make a threshold finding that a non-party to a contract is a third-party beneficiary before binding him to a forum selection clause.  While it may be true that third-party beneficiaries of a contract would, by definition, satisfy the "closely related" and "foreseeability" requirements, a third-party beneficiary status is not required.

Hugel, 999 F.2d at 209-10 n.7 (internal citations omitted).

   In Roby v. Corp. of Lloyd's, 996 F.2d 1353 (2d Cir. 1993), the court did not invoke the closely-related test.  However, it stated that "a third party will have an enforceable right if the promised performance will be of pecuniary benefit to him and the contract is so expressed as to give the promisor reason to know that such benefit is contemplated by the promisee as one of the motivating causes of his making the contract." Roby, 996 F.2d at

1359 (internal quotation marks and citation omitted); see also 4
Arthur L. Corbin, Corbin on Contracts § 776, at 18 (1st ed.
1951); Novak v. Tucows, Inc., No. 06-CV-1909(JFB)(ARL), 2007 WL
922306, at *13 n.11 (E.D.N.Y. Mar. 26, 2007).

Officers of a corporate signatory can also satisfy the
closely-related test.  For example, in Nanopierce Techs., Inc. v.
Southridge Capital Mgmt. LLC, No. 02 Civ. 0767(LBS), 2003 WL
22882137 (S.D.N.Y. Dec. 4, 2003), the counterclaim plaintiff,
Harvest Court LLC, sued Kristi Kampmann, who was Nanopierce
Technologies Inc.'s chief financial officer, alleging that she
violated the securities laws when she signed a registration
statement omitting material facts and containing false and
misleading assertions.  Nanopierce Techs., 2003 WL 22882137, at
*1.  Kampmann had not signed the Purchase Agreement between
Harvest Court and Nanopierce Technologies, Inc., which contained
the forum selection clause.  Id. at *5-6.  The court nonetheless
found that:

> Here, the Court is satisfied that Kampmann, as
> Chief Financial Officer, was "closely related" to
> [Nanopierce Technologies, Inc.'s] transaction with
> Harvest Court such that it was foreseeable that she would
> be bound by the Forum Selection Clause in the Purchase
> Agreement.  See e.g., Roby v. Corporation of Lloyd's, 996
> F.2d 1353 (2d Cir. 1993) (finding that the "complaints
> against the individual Chairs are completely dependent on
> the complaints against the [principals] . . . [and] arise
> [ ] out of the same misconduct charged against the
> [principals]"); Cinema Laser Technology, Inc. v. Hampson,
> 1991 WL 90913, at *3 (D.N.J. May 30, 1991) ("Defendants

might also argue that it would be unfair to apply the forum selection clause to individuals who were not parties to the Joint Venture Agreement, such as Sweatt, Berkowitz and McCurdy.  However, these individuals were all directors of Hampson's corporation, Digital, who was a party.").

Id. at *6.

In Hugel, "GCM and OMI assert[ed] that only Hugel [was] bound by the forum selection clause because GCM and OMI [were] not and never [had] been parties to the General Undertaking." Hugel, 999 F.2d at 209.  The following facts were material to the court's analysis there:

Hugel is President and Chairman of the Board of both GCM and OMI.  In addition, Hugel owns 99% of the stock of GCM which, in turn, owns 100% of the stock of OMI.  The alleged assurances of confidentiality were made to Hugel alone and Hugel alone decided that his corporations would participate in Lloyd's investigation.
Hugel and Lloyd's contracted to settle all of their disputes in England.  Although GCM and OMI were not members of Lloyd's, in the course of a dispute between Hugel and Lloyd's, Hugel alone involved his two controlled corporations and supplied information allegedly belonging to those corporations.  The district court found that the corporations owned and controlled by Hugel are so closely related to the dispute that they are equally bound by the forum selection clause and must sue in the same court in which Hugel agreed to sue.

Id. at 209-10.

In In re Lloyd's Am. Trust Fund Litig., 954 F. Supp. 656 (S.D.N.Y. 1997), the court observed that "the phrase 'closely related' is not particularly illuminating," but it found it helpful to refer to the principle of mutuality:

-13-

> Thus, if Plaintiffs were entitled to enforce the forum
> selection clause against Citibank in a suit in England,
> Citibank should be able to enforce the clause against the
> Plaintiffs.  If, on the other hand, Citibank is not bound
> by the choice of forum provided in the various agreements
> entered into by Plaintiffs, it should not be able to
> enforce the clauses against them.

In re Lloyd's Am. Trust Fund, 954 F. Supp. at 669.

Courts have concluded that the closely-related test has been satisfied in a number of other circumstances.  See, e.g., Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 514 (9th Cir. 1988) (holding that the claims were in the scope of the forum selection clause where the claims against non-signatories to the contract could not "be adjudicated without analyzing whether the parties were in compliance with the contract"); Weingrad v. Telepathy, Inc., No. 05 Civ.2024(MBM), 2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005) (finding the test satisfied where the plaintiff alleged the defendants acted in concert and his claims against each defendant were substantially the same and arose out of their relationships with each other); Direct Mail Prod. Servs. Ltd. v. MBNA Corp., No. 99 CIV. 10550(SHS), 2000 WL 1277597, *4 (S.D.N.Y. Sept. 7, 2000) (stating that "provisions of the Agreement plainly gave Direct Mail reason to know that one of the reasons motivating MBNA Direct to enter the contract was a desire to confer a pecuniary benefit on related MBNA companies"); Int'l Private Satellite Partners, L.P. v. Lucky Cat Ltd., 975 F.

Supp. 483, 486 (W.D.N.Y. 1997) (denying the motion to dismiss where plaintiff had alleged a <u>de facto</u> merger between non-party and the party to the contract containing the forum selection clause); <u>Cinema Laser Tech., Inc. v. Hampson</u>, Civ. A. No. 91-1018, 1991 WL 90913 (D.N.J. May 30, 1991) (relying on foreseeability in finding the forum selection clause applied to directors of one of the signatories, even though the closely-related test was not explicitly invoked).

Here, the plaintiffs argue that the defendants are not third party beneficiaries of the forum selection clause because, whereas the Investment Manager is specifically mentioned in other provisions of the Share Applications, the forum selection clause makes reference only to "the parties" and neither defendant is a party to a Share Application.  The court concludes that it is not necessary to determine whether the defendants are third-party beneficiaries of the forum selection clause because third-party beneficiary status is simply one way in which a non-party can be closely related and the defendants satisfy the requirements of the closely-related test even if they are not third party beneficiaries.

Quan is one of the four Directors of the Fund, and SIA is the Investment Manager and makes all investment decisions on behalf of the Fund under the direction and control of Quan, who

is SIA's sole member.  The plaintiffs' claims focus on the amount
of management fees being charged and the alleged failure of Quan
and SIA to comply with the redemption provisions of the Fund's
Bye-laws and the PPM.  According to the Complaint, it was SIA and
Quan who misled "the Gottex Funds into believing that [Quan and
SIA] would lower the fees charged to the Gottex Funds" and "that
[Quan and SIA] would cause the Hedge Fund to redeem the Gottex
Funds in cash if the Gottex Funds delayed their redemptions."
(Compl. ¶ 3.)  Not only are Quan and SIA closely related to the
Fund, but the Fund is so closely related to the dispute being
litigated in this case that it is foreseeable that it will be
bound by the outcome.  Thus, it is foreseeable that the non-
parties, Quan and SIA, would enforce the forum selection clause
by virtue of the relationship between the Fund and the
plaintiffs.

     In addition, under the Share Applications, the plaintiffs
have obligations to SIA with respect to maintaining the
confidentiality of certain information, and they also agree to
indemnify "the Fund and the Investment Manager and each of their
affiliates and their officers, directors and employees" for
losses occurring in connection with misrepresentations or
breaches made by the subscriber or its agents or the subscriber's
failure to fulfill agreements or covenants under the Share

Application.  (Pls.' Opp'n, Ex. A at A-4, § 12.)  If the
plaintiffs breached their obligations to Quan and/or SIA under
these provisions of the Share Applications, the plaintiffs would
be able to enforce the forum selection clause against Quan or
SIA.  Thus, the principle of mutuality also supports the
conclusion that the requirements of the closely-related test are
satisfied here with respect to the parties involved in this
action.

The second aspect of the third step in the analysis set out
in Phillips is that the claims involved in the suit are subject
to the forum selection clause.  The court concludes that they
are.

The forum selection clause here applies to "any action or
proceeding arising, directly, indirectly or otherwise, in
connection with, out of, related to, or from, this Share
Application, any breach hereof, or any transaction covered
hereby."  (Pls.' Opp'n, Ex. A at A-8, § 15(e).)  The Second
Circuit has distinguished the words "arise out of" from some of
the other words in the forum selection clause here.  In Phillips,
it noted that it did "not understand the words 'arise out of' as
encompassing all claims that have some possible relationship with
the contract, including claims that may only 'relate to,' be
'associated with,' or 'arise in connection with' the contract."

-17-

Phillips, 494 F.3d at 389; see also Coregis Ins. Co. v. Am.
Health Found., Inc., 241 F.3d 123, 128 (2d Cir. 2001) (noting
that "the ordinary meaning of the term 'related to' as used in
the Provision is broader than the term 'arising out of'").
"Webster's Dictionary defines 'related' simply as 'connected by
reason of an established or discoverable relation.'" Coregis
Ins., 241 F.3d at 128 (quoting Webster's Third New International
Dictionary 1916 (1986)); see also Black's Law Dictionary 1288
(6th ed. 1990) (defining "related" as "standing in relation;
connected; allied; akin").

     The claims here fall within the broad language of the forum
selection clause.  The Complaint alleges that "[i]n connection
with its initial purchase of Class A shares of the Hedge Fund,
BNY for and on behalf of the Gottex Funds executed Share
Applications pursuant to the terms of the [PPM]."  (Compl. ¶ 22.)
The Share Applications reflect that the subscriber's subscription
is "upon the terms of the [PPM]."  (Pls.' Opp'n, Ex. A at A-2, §
1.)  Each Additional Subscription Request provided that the
subscriber restated all of the agreements, etc. made in the
subscriber's original Share Application.  Each of the claims in
the Complaint is directly or indirectly related to the purchase
of shares in the Fund as each is based on either the amount of
management fees being charged or the alleged failure by the

-18-

defendants to comply with the redemption provisions of the Fund's Bye-laws and the PPM.

The final step of the analysis under <u>Phillips</u> is determining whether the plaintiffs have rebutted the presumption of enforceability of the forum selection clause.  The plaintiffs have not met their "heavy burden" of showing that enforcement of the clause would be unreasonable or unjust.  <u>See</u> <u>New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG</u>, 121 F.3d 24, 32 (2d Cir. 1997).  "[T]o escape the contractual clause, [one] must show 'that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" <u>Id.</u> (quoting <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 18 (1972)).  The potential unavailability in a Bermuda forum of certain legal theories of recovery is not sufficient to make the forum selection clause unreasonable or unjust.  <u>See</u> <u>Roby v. Corp. of Lloyd's</u>, 996 F.2d 1353, 1360-61 (2d Cir. 1993) ("In the absence of other considerations, the agreement to submit to . . . the jurisdiction of the English courts must be enforced even if that agreement tacitly includes the forfeiture of some claims that could have been brought in a different forum.")  Furthermore, the Second Circuit "giv[es] substantial deference to the parties' selected forum" where "[t]he choice of [a] forum was made in an

-19-

arm's-length negotiation by experienced and sophisticated businessmen." <u>New Moon Shipping Co.</u>, 121 F.3d at 29 (quoting <u>M/S Bremen</u>, 407 U.S. at 12).  The Gottex Funds are sophisticated mutual fund companies managed by a Swiss company registered with the SEC as an investment advisor.  Finally, they have already commenced a parallel action against the Fund in Bermuda. Therefore, the court concludes that enforcement of the forum selection clause would not be unreasonable or unjust.

**IV.   <u>CONCLUSION</u>**

For the reasons set forth above, the Defendants' Motion to Dismiss This Action for Improper Venue (Doc. No. 39) is hereby GRANTED.

The Clerk shall close this case.

It is so ordered.

Dated this 22nd day of April 2009 at Hartford, Connecticut.

/s/AWT
_____
Alvin W. Thompson
United States District Judge

-20-